The PEOPLE of the State of
Colorado, Petitioner,

v.

Dennis KYLER, Respondent.

No. 98SC322.

Supreme Court of Colorado,
En Banc.

Dec. 13, 1999.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General Michael E. McClachlan, Deputy Attorney General John Daniel Dailey, Deputy Attorney General Robert Mark Russell, First Assistant Attorney General Lauren A. Edelstein, Assistant Attorney General Criminal Enforcement Section Denver, Colorado Attorneys for Petitioner.

Betty Bass, Denver, Colorado, Attorney for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

In this appeal we hold that to determine whether a guilty plea is voluntary the constitutionality of restraints placed upon the defendant is irrelevant. The defendant filed for post-conviction relief seeking to invalidate his pleas of guilty, claiming that he was coerced into pleading guilty because of the restraints placed upon him during the period of time leading up to the entry of his plea. After conducting a hearing, the post-conviction court denied the claim, concluding that the pleas were entered voluntarily. A divided panel of the court of appeals reversed, reasoning that the record was insufficient to support the post-conviction court's conclusion that the pleas were voluntary and that the post-conviction court improperly relied on the faulty legal conclusion that the restraints were constitutional. *See People v. Kyler,* No. 96CA0911, slip op. at 5 (Colo.App. March 26, 1998). Thus, the court of appeals remanded the case to the post-conviction court for additional findings on the issue of voluntariness. In dissent, Judge Davidson argued that the "issue of the legal propriety of the restraints does not answer the factual question whether the plea was entered voluntarily" and opined that the record supported the trial court's findings and conclusion that the defendant

entered his pleas voluntarily. The People appealed the court of appeals' decision.

We agree with the dissent and hold that although restraints may be one circumstance that affects a defendant's decision to plead guilty, the constitutionality of a defendant's restraints at the time of entry of his pleas is not relevant to determine whether he entered the plea voluntarily. We also agree with the dissent that the record adequately supports the trial court's findings and its conclusion that the defendant entered his pleas voluntarily. Hence, we reverse the court of appeals and return this case to that court with directions to remand to the trial court for the entry of the denial of the defendant's motion.

## II. FACTS AND PROCEEDINGS BELOW

Dennis Kyler was arrested in late 1992 and charged with thirteen felony counts alleging sexual assaults and attempted sexual assault on four children in violation of sections 18–3–405,[1] 18–3–405.3[2] and 18–2–101,[3] 8B C.R.S. (1992). The charges carried the following potential penalties: seven class three felonies (with a presumptive sentencing range of four to sixteen years for each count), five class four felonies (two to eight years for each count), and one class five felony (one to four years). *See* § 18–1–105(1)(a)(IV), 8B C.R.S. (1992) (describing sentencing ranges for various classes of felonies).

Three days after his arrest, the defendant escaped from county jail. He was appre-

hended nearly two weeks later. Three months after this first escape, the defendant absconded a second time and was captured the next day. Based upon these escapes, the defendant was charged with two additional felony counts of escape in violation of section 18–8–208(3), 6 C.R.S. (1999).[4]

After his second escape, prison authorities used restraints to limit the defendant's movement. Chains bound the defendant's ankles and a waist chain bound the defendant's elbows to his sides. The defendant was also handcuffed. He was confined in this manner at all times except when one hand was uncuffed to allow him to eat or to use the toilet. Five days after his second recapture the trial court ordered the defendant's restraints relaxed by removing the shackles between approximately ten p.m. and six a.m. However, one ankle remained chained to his bed during this time period.

Five days after being placed under relaxed restraints at night, the defendant accepted a plea bargain and pleaded guilty to one count of sexual assault on a minor by one in a position of trust (a class three felony) and one count of escape (a class four felony). In return, the prosecution dismissed the remaining thirteen felony charges (twelve alleging sexual abuse of children and the second escape charge).

At the Rule 11[5] hearing, the defendant tendered a written plea to each of the two felonies. In each written plea the defendant agreed to the following statement: "My plea

1. "Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim." § 18–3–405(1).

2. "Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child by one in a position of trust if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with the victim." § 18–3–405.3.

3. "A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." § 18–2–101(1).

4. "A person commits a class 4 felony if, while being in custody or confinement and held for or charged with but not convicted of a felony, he knowingly escapes from said custody or confinement." § 18–8–208(3). *See also* § 18–8–209 (escape sentences "shall run consecutively with any sentence which the offender was serving at the time").

5. Crim. P. 11(b) provides that:

    The court shall not accept a plea of guilty or a plea of nolo contendere without first determining that the defendant has been advised of [his rights] and also determining:

    . . . .

    (2) That the plea is voluntary on defendant's part and is not the result of undue influence or coercion on the part of anyone. . . .

of guilty is voluntary, my decision, and not the result of undue influence, coercion or force on the part of anyone." The defendant and his attorney stated in each document that the defendant read fully and knew the import of all the terms and requirements of the plea. The defendant and his defense attorney signed each pleading.

At the Rule 11 hearing, the court questioned the defendant about the voluntariness of his pleas. The court asked the defendant in general terms about any coercion or undue influence that might affect the voluntariness of the defendant's guilty plea, but the court did not mention the restraints. Four separate times the defendant stated that the pleas were voluntary and free of force or coercion. The defense attorney told the court that the defendant felt it was important to resolve the case to be freed from the "terms of his confinement," but the defendant did not mention his restraints. In response to the defense attorney's reference to the shackling, the Rule 11 court asked the defendant if the partially relaxed restraints enabled him to sleep more comfortably; the defendant verified that they had.

> THE COURT: Have you been promised leniency or favors or special consideration for this guilty plea other than what has been stated to me here in open court?
>
> DEFENDANT: No.
>
> [The court then verified the charges and the defendant confirmed that he wished to plead guilty.]
>
> THE COURT: Are you entering this plea freely and voluntarily and not as a result of any undue influence or coercion on the part of anyone?
>
> DEFENDANT: Yeah.
>
> THE COURT: This applies to both offenses, the sexual assault as well as the escape charge?
>
> DEFENDANT: Yeah.
>
> PROSECUTOR: Your Honor, I noted some hesitation. Perhaps you'd like to go back and cover that.
>
> THE COURT: Has anyone forced you to enter this plea?
>
> DEFENDANT: No.

> THE COURT: This is your voluntary plea and voluntary act?
>
> DEFENDANT: Yeah.
>
> THE COURT: Do you have any reservations here, Mr. Kyler?
>
> DEFENSE COUNSEL: Your Honor, what he's related to me is that Mr. Kyler is—today and continues to be shackled. His freedom of movement is totally confined within the jail. Even within a totally secure setting. And—Mr. Kyler—feels that it's an important thing for him to resolve the case in order to free himself of these terms of his confinement.
>
> THE COURT: Is there any question in his mind as to whether he's guilty of these two charges?
>
> DEFENDANT: No.
>
> THE COURT: That's what I have to decide. Did they do anything about your sleeping in bed at night?
>
> DEFENDANT: They chained me to the bed, yeah. Took off the belly chains and chained me to the bed.
>
> THE COURT: Can you sleep more comfortably than you did with the belly chains?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay.

After this colloquy, the court entered findings, concluding that the pleas were "voluntary and intelligently given without undue influence or coercion." On the same day, after the defendant pleaded guilty to the two felonies, the authorities removed the handcuffs, waist chain, and ankle chains that had restrained the defendant. However, the defendant remained chained to his bed at all times except to take a shower.

At sentencing, the court imposed a sixteen-year sentence for the sexual assault on a child count and a consecutive four-year sentence on the escape count. During the sentencing hearing the defendant said nothing about the coercive effect that his shackles had on his decision to plead guilty. He did say that he was sorry for what had happened to the children.

A year and a half later, the defendant sought relief under Rule 35(c)[6] claiming his pleas were invalid because they were involuntary on a number of bases: that his attorney rendered ineffective assistance of counsel; that he was suffering nicotine withdrawal at the time he entered his pleas; that he had been denied prescription medication; that he was denied phone privileges; that the conditions of his confinement before his second escape were unsanitary; and that the severity of his restraints "was in effect torture."

These claims were heard by a different judge than the judge who accepted the defendant's pleas at the Rule 11 hearing. The defendant testified that he pleaded guilty "[t]o get out of the county jail," that he felt his plea was not voluntary, and that if he had not been shackled he would not have pleaded guilty. He testified, "I'd have said anything to get out of that county jail. I'd have pled guilty to murder. . . ."

Even though the defendant maintained that his guilty pleas were involuntary due to the coercive effects of his restraints, he acknowledged in testimony that he had posed "an escape risk," admitted bragging to prison officers about his ability to escape, and admitted suggesting he be rewarded with a year off of his sentence for every time he could escape. He acknowledged that the relaxation of his restraints at night for the five days preceding the entry of his pleas left him in "substantially less discomfort" and afforded him a "substantially greater opportunity to rest," making his life "easier." The defendant's former defense attorney testified that he told the defendant he saw no viable defense on the escape charges. He told the defendant that it was "probably inevitable" that the defendant would be convicted on those charges and face consecutive sentences to any convictions that resulted from the thirteen underlying sexual assault charges.

The 35(c) court denied the defendant's motion after conducting a detailed evidentiary hearing and reviewing the pre-sentence report and the transcript of the defendant's Rule 11 proceeding. The court discredited the defendant's testimony, finding that various portions were "not substantiated by the evidence,"[7] "incredible" in the face of conflicting testimony from other witnesses,[8] and even demonstrably "untruthful."[9] In several instances the defendant's own testimony refuted his claims.[10]

The 35(c) court found during the hearing that the restraints, although uncomfortable, were appropriate and necessary to prevent another escape and to protect the community:

> I find that the security measures, while they were uncomfortable and very confining to you, were not inappropriate given the circumstances of two prior escapes,

---

6. Crim. P. 35(c) allows a defendant to raise collateral, post-conviction attacks as follows:
   [E]very person convicted is entitled as a matter of right to make application for postconviction review upon the grounds hereinafter set forth. Such an application for postconviction review must, in good faith, allege one or more of the following grounds to justify a hearing thereon:
   (I) That the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state. . . .

7. The defendant's claim of ineffective assistance of counsel was not substantiated because the record did not indicate that counsel had failed to meet with defendant or make materials available to him.

8. The defendant's claim that his cell was unsanitary because of a non-functional toilet was contradicted by the testimony of multiple witnesses who had entered the cell during the period and noticed nothing unusual with the facilities.

9. The defendant had claimed that he had been transferred out of a psychiatric facility because he had been smoking. In fact, he had been transferred because he had shorted out the electrical system trying to light a cigarette in a light socket and, when searched, was found to be carrying an impermissible shank.

10. Defendant's testimony that prison guards took him outside to smoke, against institutional policy, contradicted his claim that he was denied cigarettes and suffered nicotine withdrawal. Defendant's claim that he was denied needed medication, lithium, was controverted by his admission at the hearing that doctors whom he had seen in jail said he was unable to take lithium because of his failing liver. Likewise, the defendant admitted he was denied phone privileges for making repeated, unwelcome calls to his estranged wife.

also given the fact that these charges involve sexual assaults on children who lived in this area and who would have been accessible to you upon an escape from this facility.

The 35(c) court supplemented its oral findings with a written order. In the order, the court noted that the defendant told the Rule 11 court at the time he entered his pleas that he could sleep more comfortably. The 35(c) court found that at sentencing approximately three weeks after entering his plea (and after the cuffs and waist chains were removed), the defendant "did not indicate ... any reservations about the entry of his plea, instead he apologized and admitted his guilt again." The court found that, given the defendant's two earlier escapes, "[i]t may be assumed that the normal methods of dealing with escape were ineffective, and that the use of the additional restraints was necessary for the specific limited purpose of preventing further escape."

Concerning the effect of the restraints on the defendant's state of mind when entering the plea, the court found that "no indication of this problem was made [by the defendant] at the time of entry of his plea," and that "[t]he defendant did not allege any pain as a result of his appearance or confinement in shackles." The court found, "Defendant had the ideal opportunity after the statements of his attorney [about resolving the case to free himself from shackles] to indicate that he was coerced by the shackling into entry of his plea, he instead admitted his guilt with full understanding of the consequences of his plea." The court considered that the nature of the defendant's plea bargain involved the dismissal of twelve felony charges of sexual assault and one escape charge and found that the decision to plead guilty under the circumstances was an appropriate decision by the defendant and his attorney.

> The Defendant was in an extremely difficult, if not impossible, position to defend, based upon his two escapes. The choice to accept a plea bargain represented an appropriate decision by counsel and the defendant.

As part of its written order, the court found that "[t]here was no indication that the restraints were removed as a result of Defendant's plea," implying that there was no causal connection between the entry of the guilty plea and the removal of the restraints. The court also opined that the restraints were constitutional: "The shackling met the requirements in *Ferola v. Moran,* in that it was done only for the limited purpose of preventing escape, and for a limited amount of time." *See* 622 F.Supp. 814, 821–25 (D.R.I.1985) (ruling that shackling prisoner spread-eagled for twenty hours with no medical monitoring violated the Eighth Amendment, and adopting Federal Prison System guidelines regarding restraints).

On appeal the defendant asserted only that his plea was involuntary because of the coercive effect of the restraints placed upon him. A divided panel of the court of appeals reversed the 35(c) court's order. The majority held that the 35(c) court's decision regarding voluntariness rested on the "faulty legal conclusion" that the restraints were constitutional, when in actuality the restraints were unconstitutional. The court remanded the case to the 35(c) court for further factual determinations regarding voluntariness.

Assessing the permissibility of the defendant's restraints, the majority concluded that the restraints constituted "punishment" of a pretrial prisoner, in violation of the defendant's right to due process of law. *See Bell v. Wolfish,* 441 U.S. 520, 535–40, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The majority stated that the defendant's right to due process had been violated because "the nature of the restraints employed and the timing of their removal clearly show that they were not imposed simply to insure [the defendant's] continued presence in the jail." The majority noted that the trial court's decision that the shackles met the standards of *Ferola* was unsupported by the record. Because the 35(c) court failed to assess properly the unconstitutionality of the restraints, the majority held that the trial court's determination that the pleas were voluntary could not be upheld.

Concerning the 35(c) court's determination of voluntariness, the court of appeals reasoned that the record was inadequate to support the 35(c) court's conclusion that the

pleas were voluntary. The record was inadequate, the court reasoned, because the Rule 11 court had failed to ask the defendant more questions about his restraints following the defense attorney's comment concerning the defendant's desire to be free his confinement. The court suggested that the Rule 11 court might have ordered the restraints removed and continued the hearing for a reasonable period thereafter. The court of appeals remanded the case and directed the 35(c) court to conduct a more detailed voluntariness inquiry and to take into consideration the unconstitutionality of the restraints.

Disagreeing, Judge Davidson reasoned that it was immaterial whether the restraints were unconstitutional since this is a legal question that concerns only whether the defendant could sue for damages or injunctive relief. The dissent argued that "the issue of the legal propriety of the restraints does not answer the factual question whether the plea was entered voluntarily." Turning to the existing record, the dissent pointed to the 35(c) court's findings that the defendant's testimony at the Rule 11 hearing established the voluntariness of his plea. The dissent noted that the defendant acknowledged repeatedly at the Rule 11 hearing that his plea was not coerced. The dissent noted that the 35(c) court made "specific negative findings as to defendant's credibility" in testifying at the 35(c) hearing that the pleas were coerced. The dissent also noted that the defendant raised no issue of the pleas' voluntariness at sentencing even though three weeks had passed since the waist chain and handcuffs were removed. Thus, the dissent concluded that the record supported the 35(c) court's decision that the defendant entered his pleas voluntarily and remand was unnecessary.

## III. ANALYSIS

■ We begin our analysis in this case by restating well-settled principles of law concerning guilty pleas. As the Supreme Court stated: "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Ala-*

*bama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea thus involves the waiver of several important constitutional rights—by pleading guilty to a charge, the defendant waives his Fifth Amendment privilege against self-incrimination, the Article III and Sixth Amendment right to trial by jury, and the right to confront one's accusers. *See id.* at 243, 89 S.Ct. 1709. A guilty plea also involves the waiver of the right to a speedy and public trial, the right to insist at trial that the prosecution establish guilt beyond a reasonable doubt, and the right to present witnesses at trial on the defendant's behalf. *See People v. Lesh,* 668 P.2d 1362, 1367 (Colo.1983); *ABA Standards for Criminal Justice: Pleas of Guilty* 14–1.4(a)(iv) (3d. ed.1999).

■ Because an accused waives significant constitutional rights when entering a guilty plea to a felony, a Rule 11 court must ensure that the defendant's decision to enter the guilty plea is voluntary—that is, the court may accept the defendant's plea only if he completely understands the consequences of the plea and only if the guilty plea represents a free and rational choice. *See Boykin,* 395 U.S. at 242–44, 89 S.Ct. 1709; *People v. Wade,* 708 P.2d 1366, 1368 (Colo.1985). A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant," and must be the product of "a free and rational choice." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *see also Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391, (1992); *Workman v. People,* 174 Colo. 194, 198, 483 P.2d 213, 215 (1971) (plea upheld where record indicated "a considered, deliberate, advised choice"). A plea may not be the product of "actual or threatened physical harm or . . . mental coercion overbearing the will of the defendant." *Brady v. United States,* 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A defendant's plea is involuntary if he was "so gripped by fear . . . or hope of leniency that he did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of

pleading guilty." *Id.*[11]

To ensure that a plea represents the accused's free and reasoned decision, the Rule 11 court must, to some degree, assess the defendant's state of mind when he enters a guilty plea. *See Wade,* 708 P.2d at 1368. To make this assessment, the Rule 11 court must consider "all of the relevant circumstances surrounding [the entry of the plea]." *Brady,* 397 U.S. at 749, 90 S.Ct. 1463; *see also Henderson v. Morgan,* 426 U.S. 637, 644, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (applying totality of circumstances test); *People v. Drake,* 785 P.2d 1257, 1268 (Colo. 1990). Relevant circumstances include any facts that tend to indicate that the accused's will was overborne in making the decision to plead guilty. Other cases illustrate examples of circumstances that are relevant to the determination of whether a plea was a free and rational choice. *See, e.g., United States v. Taylor,* 139 F.3d 924, 928 (D.C.Cir.1998) (addressing whether defendant's plea was coerced by financial pressure of counsel's "unrelenting" fee demands); *United States v. Torres,* 129 F.3d 710, 716 (2d. Cir.1997) (considering whether defendant's plea was involuntary due to fear that counsel was unprepared to go to trial); *United States v. Carr,* 80 F.3d 413, 417 (10th Cir.1996) (considering whether voluntariness was affected by fact that counsel had "hounded, browbeaten and yelled at [defendant]" and called him "stupid" and "a fucking idiot" if he did not accept plea, and that co-defendants pressured defendant to plead guilty); *Bresnahan v. People,* 175 Colo. 286, 293, 487 P.2d 551, 555 (1971) (considering whether plea was involuntary because defendant wanted to relieve expense of defense counsel borne by family); *Roberts v. People,* 169 Colo. 115, 118–20, 453 P.2d 793, 795–96 (1969) (determining whether "filthy, malodorous" conditions of confinement at jail affected voluntariness of guilty plea); *ABA Standards* 14–1.5 (noting that a court may also consider wheth-

er any plea discussions or agreements had a bearing on the voluntariness of the plea).

When appropriate, a court should consider the impact of physical restraints on the voluntariness of a defendant's guilty plea as part of the totality of the circumstances existing at the time the plea was entered. A defendant's confinement and physical condition at the time the plea is entered may affect his state of mind. The crucial issue to determine voluntariness is the degree to which the restraints affected the defendant's state of mind at the time he pleaded guilty.

Whether the restraints imposed on the defendant were constitutional represents a different inquiry from whether the defendant's plea was voluntary. If the purpose of the restraints is pretrial punishment and the restraints are not merely "an incident of some other legitimate governmental purpose," then the restraints are unconstitutional and the prisoner possesses a constitutional tort cause of action. *Wolfish,* 441 U.S. at 538, 99 S.Ct. 1861 (defining standard for constitutionality of restraints); *Ferola,* 622 F.Supp. at 820–23 (entering judgment for plaintiff in 42 U.S.C. § 1983 claim based on unconstitutional restraints). The question of whether restraints were imposed in furtherance of a legitimate governmental purpose or as punishment focuses on the state of mind of the authorities who placed the restraints on the prisoner. *See Wolfish,* 441 U.S. at 535–39, 99 S.Ct. 1861.

In contrast to the inquiry into whether restraints were imposed for illegitimate purposes, the question of whether a guilty plea is voluntary focuses on the state of mind of the accused at the time the plea is entered. *See Wade,* 708 P.2d at 1368. A judicial determination that the restraints were unconstitutional does not answer the question of whether the restraints so im-

---

**11.** We note that part of the analysis of whether a plea is voluntary involves the duty of the Rule 11 court to ensure that the plea is knowingly and intelligently made. *See ABA Standards* 14–1.4 & cmt. (citing *Bousley v. U.S.,* 523 U.S. 614, 618–19, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). This inquiry focuses on whether the accused has been informed of significant information neces-

sary to make a voluntary decision to enter a plea and is not the subject of this appeal. Here, we deal with the aspect of voluntariness that concerns whether the plea represents a reasoned and free choice of the accused, untainted by coercive pressures. *See ABA Standards* 14–1.5 cmt.

paired a defendant's ability to weigh rationally the advantages of going to trial against the advantages of pleading guilty that the defendant's will was overborne and her plea coerced. The voluntariness inquiry requires a court to review whether the restraints, constitutional or not, affected the accused's state of mind at the time of entry of the plea. Hence, we conclude that the constitutionality of the existing restraints upon a defendant is irrelevant to determining the voluntariness of her guilty plea.

■ Having distinguished between the separate questions of whether shackles were placed on an accused consistent with the constitution and whether the restraints coerced the entry of a guilty plea, we next address the standard of appellate review of post-conviction court findings of fact and law. In a case such as this, involving mixed questions of both law and fact, we defer to the trial court's findings of fact when they are supported by sufficient evidence in the record, and we subject the court's legal conclusions to de novo review. *See People v. Romero,* 953 P.2d 550, 555 (Colo.1998).

## IV. APPLICATION

■ We now turn to the question of whether the defendant entered his pleas voluntarily. The court of appeals concluded that the restraints were unconstitutional. That court noted that the Rule 11 court failed to question the defendant in detail concerning the effect of the restraints on his decision to plead guilty when it accepted the defendant's pleas. As a result, the court ruled that the existing record was inadequate for appellate review on the question of voluntariness. Giving effect to its two-part holding, the court of appeals reversed the 35(c) court's denial of the defendant's post-conviction motion but remanded the case for additional fact-finding on the question of voluntariness. We are unpersuaded by this analysis.

We hold that the court of appeals erroneously relied on its determination that the restraints were unconstitutional in reversing the 35(c) court. As discussed, the constitutionality of the restraints placed upon the defendant is irrelevant to the question of

whether the defendant's plea is voluntary. We agree with the majority's observation that when accepting the defendant's pleas the better practice would have been to question the defendant in detail concerning the effect, if any, of the restraints on his decision to plead guilty. However, our review convinces us that the record adequately supports the 35(c) court's conclusion that the defendant entered his pleas voluntarily and free from coercion.

The 35(c) court found that portions of the defendant's testimony at the 35(c) hearing were "incredible," unsubstantiated and "untruthful." That court also ruled that the restraints placed on the defendant were necessary to prevent him from escaping and to protect the community. The 35(c) court found that when the defendant entered his plea he did not say he was in pain and gave no indication of coercion although his counsel's statement offered "the ideal opportunity" to do so. The 35(c) court noted the advantages provided to the defendant by the plea bargain that he accepted, and it found that his acceptance of the bargain was an "appropriate decision" given that the defendant faced trial under circumstances in which a successful defense would have been "difficult, if not impossible."

Addressing the defendant's testimony to the Rule 11 court about the effect of his shackles, the 35(c) court noted that three times during the advisement the defendant told the court that he was not being forced to enter the pleas. At the Rule 11 hearing, the defendant reiterated his guilt several times. At his sentencing, he stated no "reservation about the entry of his plea, [rather] he apologized and admitted his guilt again." Based upon its review of the Rule 11 proceedings, the sentencing hearing, the pre-sentence investigation report, and the evidence presented at the post-conviction review hearing, the 35(c) court agreed with the Rule 11 court's conclusion and findings that the defendant's pleas were voluntary and that the defendant had admitted his guilt with full understanding of the consequences.

Our review of the record reveals sufficient evidence to support the 35(c) court's findings

and its conclusion that the shackling did not coerce the defendant to enter his pleas. When asked about his condition after the restraints were relaxed at night, the defendant told the court during the Rule 11 advisement that he was able to sleep "more comfortably." The defendant testified at the post-conviction hearing that when he entered his pleas he was in "substantially less discomfort" because the restraints had been relaxed. During the Rule 11 advisement the defendant stated six times—twice in writing and four times orally—that he was not coerced to enter his guilty pleas. The defendant had been advised by his attorney that he had little defense on the escape counts, which required consecutive sentences, and faced numerous counts of sexual assaults on children involving potentially long prison sentences. The trial court's conclusion that, by accepting the proposed plea bargain the defendant made an appropriate decision, appears consistent with our case law, in which we have upheld guilty pleas where the record revealed "a considered, deliberate, advised choice." *Workman*, 174 Colo. at 198, 483 P.2d at 215.

Although severely confined at the time of the plea, the defendant's claim that he pleaded guilty to free himself from "the terms of his confinement" was undermined by his lack of credibility. At the 35(c) hearing, the defendant testified that his plea was coerced not only because of the restraints but also for other reasons: he did not receive appropriate medication; he was undergoing nicotine withdrawal; and the toilet in his jail cell did not work. The 35(c) court found each of these other claims of coercion to be unsupported. The 35(c) court specifically found that the defendant was "untruthful" in parts of his testimony.

The 35(c) court made no specific finding on the credibility of the defendant's claims that "I'd have said anything to get out of that county jail," and "I'd have pled guilty to murder." However, by accepting the truthfulness of the defendant's statements made during the Rule 11 advisement that he was entering the guilty plea voluntarily, the 35(c) court implicitly rejected the defendant's credibility regarding this claim. We must defer to the negative credibility findings the trial court made concerning the defendant's truthfulness. Given the lack of credibility attributed to some of the defendant's claims that his pleas were involuntary and the acceptance of his statements made during the Rule 11 advisement, the conclusion reached by the 35(c) court that the pleas were voluntary is adequately supported by the record and consistent with our standard for appellate review of such determinations.

Lastly, we address a related question of fact-finding by the 35(c) court. The court of appeals commented that "the nature of the restraints employed and the timing of their removal clearly show that they were not imposed simply to insure [the defendant's] continued presence in the jail." We acknowledge that reasonable minds might differ concerning whether the partial removal of the defendant's shackles soon after the entrance of his plea occurred because the defendant had just pleaded guilty or because of reasons not connected to the defendant's plea. However, an appellate court must defer to trial court factual findings unless they are clearly erroneous or lack the support of competent evidence in the record. *See People v. Quezada*, 731 P.2d 730, 732–33 (Colo.1987). Here, the trial court found that "there was no indication that the restraints were removed as a result of entry of Defendant's plea." Because we find no evidence to the contrary, we affirm the trial court's findings and conclusion.

## V. CONCLUSION

We conclude that the record supports the 35(c) court's findings that the defendant voluntarily pleaded guilty, and we affirm that court's denial of the defendant's 35(c) motion. We hold that the court of appeals erred in considering the constitutionality of the defendant's restraints in determining whether the defendant's pleas were voluntary. The totality of the circumstances and the 35(c) court's factual findings adequately support its conclusion that the defendant made a voluntary choice to plead guilty to two felony counts rather than face trial on fifteen counts. Thus, we hold that the defendant's pleas were valid. Accordingly, we reverse the

court of appeals and return this case to that court with instructions to remand to the trial court for entry of the denial of the defendant's Rule 35(c) motion.