**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DENNIS JAMES KYLER,

       Petitioner-Appellant,

v.

RANDY FOSHEE, Acting Warden
for Colorado Territorial Correctional
Facility; ATTORNEY GENERAL
OF THE STATE OF COLORADO,

       Respondents-Appellees.

No. 03-1104
(D.C. No. 00-MK-1534 (CBS))
(D. Colo.)

---

**ORDER AND JUDGMENT**  *

---

Before **McCONNELL** , **ANDERSON** , and **BALDOCK** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Dennis James Kyler, appearing *pro se* in federal proceedings, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges the guilty plea he entered on three grounds, but the district court found that he had procedurally defaulted on two of those grounds by failing to exhaust his state remedies. We agree that Kyler defaulted on those two claims. Kyler's third claim is that his guilty plea should not be considered voluntary because he had been kept in restraints before entering his plea. Kyler had escaped twice before his plea hearing, and the initial state court to review Kyler's post-conviction motion found that the imposition of the restraints was both necessary to protect the community and constitutional. The Colorado Supreme Court upheld the validity of Kyler's plea regardless of the constitutionality of the restraints.

Our review on habeas corpus proceedings is limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. We hold that the Colorado Supreme Court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* at § 2254(d)(1), and we affirm the denial of a writ of habeas corpus.

BACKGROUND

*1. The Procedural History of Kyler's Case in the State Courts*

In 1992, Kyler was charged with thirteen felony counts of sexual assault and attempted sexual assault on four children in violation of Colorado Revised Statutes §§ 18-3-405,[1] 18-3-405.3,[2] and 18-2-101.[3] *People v. Kyler*, 991 P.2d 810, 812 (Colo. 1999) (en banc). He escaped three days after his arrest. *Id.* Two weeks later, Kyler was apprehended, but escaped again. *Id.* When Kyler was re-arrested, prosecutors added two counts of felony escape in violation of Colorado Revised Statute § 18-8-208(3).[4] *Id.*

---

[1]     Colo. Rev. Stat. § 18-3-405(1) (1992) reads: "Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim."

[2]     Colo. Rev. Stat. § 18-3-405.3(1) (1992) reads: "Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child by one in a position of trust if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim."

[3]     Colo. Rev. Stat. § 18-2-101(1) (1992) reads: "A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense."

[4]     The text of this statute reads: "A person commits a class 4 felony if, while being in custody or confinement and held for or charged with but not convicted of a felony, he knowingly escapes from said custody or confinement." Colo. Rev. Stat. § 18-8-208(3) (1993); *see also* Colo. Rev. Stat. § 18-8-209 (1993) (establishing that sentences for escapes "shall run consecutively and not

(continued...)

After Kyler's second escape, prison authorities used restraints to limit his movement at all times except to eat or to use the toilet. *Id.* He was handcuffed, his ankles were chained, and another chain bound his elbows to his sides. *Id.* Five days after these restraints were applied the trial court ordered that the method of restraint be relaxed by removing the chain around Kyler's ankles from 10 p.m. to 6 a.m. *Id.* During this time, though, one of Kyler's ankles was to be chained to his bed. *Id.*

Five days later, Kyler accepted a plea bargain in which he agreed to plead guilty to one count of sexual assault on a minor by one in a position of trust and to one count of escape in exchange for prosecutors dismissing the remaining thirteen charges against him. *Id.* At his change-of-plea hearing, Kyler signed a written statement for each of the two charges attesting that his "plea of guilty is voluntary, my decision, and not the result of undue influence, coercion or force on the part of anyone." *Id.* at 812-13. The judge repeatedly questioned Kyler about the voluntariness of his plea, and Kyler stated a total of five separate times that his plea was voluntary and free of force or coercion. *Id.* at 813. Kyler's attorney did object to the shackles as coercive,[5] but the judge asked directly whether

---

[4](...continued)
concurrently with any sentence which the offender was serving at the time").

[5] This objection was made in the context of the change-of-plea hearing as follows:

(continued...)

     THE COURT: Have you been promised leniency or favors or special consideration for this guilty plea other than what has been stated to me here in open court?

     DEFENDANT: No.

     [The court then verified the charges and the defendant confirmed that he wished to plead guilty.]

     THE COURT: Are you entering this plea freely and voluntarily and not as a result of any undue influence or coercion on the part of anyone?

     DEFENDANT: Yeah.

     THE COURT: This applies to both offenses, the sexual assault as well as the escape charge?

     DEFENDANT: Yeah.

     PROSECUTOR: Your Honor, I noted some hesitation. Perhaps you'd like to go back and cover that.

     THE COURT: Has anyone forced you to enter this plea?

     DEFENDANT: No.

     THE COURT: This is your voluntary plea and voluntary act?

     DEFENDANT: Yeah.

     THE COURT: Do you have any reservations here, Mr. Kyler?

     DEFENSE COUNSEL: Your Honor, what he's related to me is that Mr. Kyler is--today and continues to be shackled. His freedom of movement is totally confined within the jail. Even within a totally secure setting. And--Mr. Kyler--feels that it's an important thing for him to resolve the case in order to free himself of these terms of his confinement.

     THE COURT: Is there any question in his mind as to whether he's guilty of these two charges?

     DEFENDANT: No.

     THE COURT: That's what I have to decide. Did they do anything about your sleeping in bed at night?

     DEFENDANT: They chained me to the bed, yeah. Took off the belly chains and chained me to the bed.

     THE COURT: Can you sleep more comfortably than you did with the belly chains?

     DEFENDANT: Yes, ma'am.

(continued...)

there was any question in Kyler's mind whether he was guilty of the charges. *Id.*

Kyler answered no. *Id.* The judge then inquired whether the modification to

Kyler's restraints had allowed him to sleep more easily at night. *Id.* Kyler

confirmed that he had slept comfortably. *Id.*

After the judge accepted Kyler's plea, prison authorities removed the

majority of Kyler's restraints, but he remained chained to his bed at all times

except to take a shower. *Id.* Kyler was sentenced to sixteen years for the sexual

assault count and four years for the escape count, to be served consecutively. *Id.*

More than a year and a half after sentencing, Kyler filed a motion in state

court to vacate his sentence. *Id.* at 814. He asserted that his plea should be

considered involuntary for a number of reasons including that his attorney had

rendered ineffective assistance of counsel; that he had been suffering nicotine

withdrawal at the time he entered his pleas; that he had been denied prescription

medication; that he had been denied phone privileges; that the condition of his

confinement before his second escape had been unsanitary; and that the severity

of his restraints had been "in effect torture." *Id.* His motion was heard by a

different judge than the judge who had accepted his plea. *Id.* The new judge

---

[5](...continued)
> THE COURT: Okay.
> [After this colloquy, the court entered its findings, concluding that
> Kyler's plea was "voluntary and intelligently given without undue
> influence or coercion."] *Kyler*, 991 P.2d at 813.

-6-

rejected Kyler's motion, finding his testimony to have been, among other things, "not substantiated by the evidence," "incredible in the face of conflicting testimony from other witnesses," "untruthful," and contradictory on its own terms. *Id.*

The reviewing court also found that Kyler's restraints, although uncomfortable, had not been inappropriate given Kyler's history of escapes and the fact that the charges against him had involved sexual assaults on children who lived in the area and who would have been accessible to him had he escaped again. *Id.* at 814-15. Additionally, the court noted that Kyler had reported during the plea colloquy that he had been able to sleep comfortably in the restraints, and that Kyler made no objection himself regarding the use of the restraints after his attorney's comment during the change-of-plea hearing when he had ample opportunity to do so. *Id.* at 815. Finally, the court opined that the use of the restraints in Kyler's case had been constitutional because they had been imposed "for the limited purpose of preventing escape, and for a limited amount of time." *Id.*

Kyler's single assertion on appeal in state court was that his plea should be considered involuntary because the restraints had been coercive. *Id.* A divided state court of appeals held that the restraints had not, in fact, been constitutional because "the nature of the restraints employed and the timing of their removal

[after Kyler's plea] clearly show that they were not imposed simply to insure [Kyler's] continued presence in the jail." *Id.* at 815. The majority remanded the case to the lower court for further factual findings regarding voluntariness. *Id.*

The Supreme Court of Colorado reversed the state court of appeals, not addressing the question whether the restraints had been constitutional, but holding that the constitutionality of Kyler's restraints was irrelevant to the determination whether his plea had been voluntary. *Id.* at 817-18. The Court explained that these were simply separate inquiries. *Id.* at 817. As the Court wrote: "In contrast to the inquiry into whether restraints were imposed for illegitimate purposes, the question of whether a guilty plea is voluntary focuses on the state of mind of the accused at the time the plea is entered." *Id.* But evaluating whether a defendant's plea was voluntary would "require[] a court to review whether the restraints, constitutional or not, affected the accused's state of mind at the time of entry of the plea." *Id.* at 818.

The Colorado Supreme Court then satisfied itself that Kyler's plea had been voluntary. *Id.* It noted that the initial reviewing court had found that portions of Kyler's testimony protesting his treatment had not been credible, and that, after his lawyer's comment, Kyler had failed to object to the restraints as coercive at his plea colloquy although he had been given "the ideal opportunity" to do so. *Id.* Kyler had in fact, on multiple occasions, sworn that his plea was voluntary. *Id.*

Moreover, Kyler had taken advantage of a highly advantageous plea bargain, which represented an "appropriate decision" under the circumstances when his likelihood of conducting a successful defense would have been "difficult, if not impossible." *Id.*

Finally, the Colorado Supreme Court took issue with the state court of appeals' comment that "the nature of the restraints employed and the timing of their removal clearly show that they were not imposed simply to insure [the defendant's] continued presence in the jail." *Id.* at 819. The Colorado Supreme Court noted that the initial reviewing court had found "no indication that the restraints were removed as a result of entry of Defendant's plea." *Id.* Because appellate courts in Colorado must defer to a trial court's findings of fact unless they are clearly erroneous or lack the support of competent evidence in the record, and there was no evidence suggesting that either was true in Kyler's case, the Supreme Court of Colorado affirmed the initial court's findings and conclusion that Kyler's plea had been voluntary. *Id.* at 819-20.

2. *Issues on Collateral Attack in Federal Court*

On collateral attack in federal court, Kyler asserts three reasons for why his guilty plea should not be binding. Kyler argues (1) that he received ineffective assistance of counsel because, *inter alia*, his trial counsel did not interview or investigate some of his defenses and recommended that he waive a preliminary

hearing; (2) that he was coerced into pleading guilty by the restraints placed on him during the time period before the entry of his plea; and (3) that he was denied his right to a preliminary hearing, a jury trial, confrontation of witnesses, and an impartial judge due to being shackled as a pretrial detainee. Petition, Doc. No. 4 at 6, 7, 9 [hereinafter Pet.]. The district court found that Kyler had procedurally defaulted on his first and third claims by failing to appeal those issues through the state courts. It denied his petition for a writ of habeas corpus on all three issues, but granted a certificate of appealability (COA) on the remaining claim that Kyler had been coerced into pleading guilty by the restraints placed on him before the entry of his plea. A COA may be granted any time a petitioner proves "something more than the absence of frivolity or the existence of mere good faith" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

In order fully to address Kyler's *pro se* petition, we must first discuss the constitutional standard for evaluating the voluntariness of a defendant's plea. Second, we respond to Kyler's assertion that the mere use of shackles itself during his detention should render the proceedings in his case unconstitutional. Third, we apply AEDPA's standard of review to hold that the Supreme Court of Colorado's interpretation of the constitutional question in Kyler's case was not "contrary to, or involved an unreasonable application of, clearly established

-10-

Federal law as established by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## STANDARD OF REVIEW

We review a district court's findings of fact for clear error and its conclusions of law de novo. *Davis v. Executive Dir. of Dep't of Corr.*, 100 F.3d 750, 756 (10th Cir. 1996). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may not issue a writ unless the state courts' adjudication of a claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law as established by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). State court determinations of fact are "presumed to be correct" unless a petitioner rebuts them with "clear and convincing evidence." *Id.* § 2254(e)(1); *Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by the [U.S. Supreme] Court on a question of law or if the state court decides a case differently than the [U.S. Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J. concurring). A

-11-

state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The reasonableness of a state court's application of federal law is to be evaluated by an objective standard. *See id.* at 409-10. Moreover, "an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412 (emphasis in original).

Finally, a petitioner must have exhausted his remedies for each claim in state court before filing for habeas corpus relief in federal court. 28 U.S.C. § 2254(b)(1). Mixed petitions of exhausted and unexhausted claims represent "procedural default for purposes of federal habeas," *Harris v. Champion*, 48 F.3d 1127, 1131 n.3 (10th Cir. 1995) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). But instead of dismissing a mixed petition in its entirety, a federal court may deem the unexhausted claims procedurally barred and address only the properly exhausted claims. *Id.*

## DISCUSSION

We agree that Kyler's first and third claims were not exhausted in the state courts, and so are procedurally defaulted under 28 U.S.C. § 2254(b)(1). Although Kyler alleged in his initial petition (i) that he received ineffective assistance of

-12-

counsel, (ii) that he had been coerced into pleading guilty by the restraints placed on him, and (iii) that he had been denied his right to trial, Pet. at 6, 7, 9, the only issue he pursued on appeal in the state courts was his claim that he had been coerced into pleading guilty by the use of the restraints. *Kyler*, 991 P.2d at 815. Failing to appeal an issue in the state courts constitutes procedural default if, as here, that claim would now be barred in those courts. *See Cannon v. Gibson*, 259 F.3d 1253, 1265 (10th Cir. 2001). The record is unambiguous that Kyler failed to appeal two of his three claims, and he makes no argument that his procedural default should be excused. We therefore need not discuss those claims further.

We now turn to the substance of Kyler's undefaulted claim that his plea should have been rendered involuntary by application of the restraints. Kyler's brief is *pro se* and contains multiple variations of his argument. He argues, for example, that the state reviewing court's conclusion of law regarding voluntariness was in error, that there is no set of circumstances in which judicial proceedings could be valid when he was shackled, and that the Colorado Supreme Court's interpretation of constitutional law cannot be substantiated. We address Kyler's various objections and ultimately hold that he has failed to show that the Colorado Supreme Court's decision regarding the use of restraints was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Because Kyler did

not argue that the decision of the state courts in his case was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2), we will presume that their findings of fact are correct. *Hale*, 227 F.3d at 1309; 28 U.S.C. § 2254(e)(1).

### 1. Voluntariness Generally

First, we agree that Kyler's plea was voluntary. Although "a valid guilty plea may not be obtained through coercion," *Osborn v. Shillinger*, 997 F.2d 1324, 1327 (10th Cir. 1993) (citations omitted), the U.S. Supreme Court's longstanding test for determinating the validity of a defendant's guilty plea is simply "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quotation omitted). On habeas review, a federal court will "uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty." *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996).

As the Colorado Supreme Court found in its extensive review, all of the facts that shed light on the state of Kyler's mind at the time he pleaded guilty indicate that his plea was voluntary. For example, during the plea colloquy process, Kyler stated at least seven times, twice in writing and five times orally, that he had not been coerced to enter his guilty plea. *See Kyler*, 991 P.2d at 819

-14-

(discussing at least six of these seven occurrences). Although he had the opportunity to do so after his attorney's comment, Kyler also failed himself to object to the restraints as coercive, and, when asked about them by the judge, responded that they were more comfortable than before and that he was able to sleep. *Id.* at 819. Finally, Kyler's plea shows that he was acting in a highly rational manner: he had been advised by his attorney that he had little defense on the escape counts, which required consecutive sentences, and that he faced long potential sentences for the other counts involving the sexual abuse of children. *Id.* at 819. By pleading guilty, Kyler was immediately able to reduce the number of counts for which he could have been convicted from fifteen to two. *See id.* In this light, Kyler's plea bargain certainly appears to have been a "voluntary and intelligent choice among the alternatives available" to him. *Hill*, 474 U.S. at 56 (quotation omitted).

*2.    The Use of Shackles*

Second, Kyler contends that the mere use of shackles should render the results of the change-of-plea hearing void without further inquiry into his mental state. We disagree. Federal courts have routinely found that the use of shackles to restrain a defendant will not necessarily invalidate a judicial proceeding. *See, e.g.*, *Illinois v. Allen*, 397 U.S. 337, 343-44, 346-47 (1970) (finding the use of shackles permissible). The Tenth Circuit has also, for example, announced that,

even at trial, judges have discretion to assess "the extent to which security measures should be adopted to prevent the disruption of the trial, harm to those in the courtroom, *[and] escape of the accused*." *United States v. Hack*, 782 F.2d 862, 867 (10th Cir. 1986) (quoting *United States v. Samuel*, 431 F.2d 610, 615 (4th Cir. 1970)) (emphasis added); *accord Mitchell v. Maynard*, 80 F.3d 1433, 1446-47 (10th Cir. 1996). The state trial court here explained that Kyler presented a significant flight risk both because he had escaped twice before and because his victims had been children in the nearby community. *See Kyler*, 991 P.2d at 814-15. The shackles had been imposed on him "for the limited purpose of preventing escape, and for a limited amount of time." *Id.* at 814. And ultimately the severity of the shackling system was lightened as it became clear what level of restraint would be the minimum to prevent Kyler from escaping. *See generally id.*

Moreover, federal courts will refuse to hold a defendant's plea involuntary merely because it was made under stress or because he faced difficult choices. *See, e.g.*, *Brady v. United States*, 397 U.S. 742, 755 (1970) (pleading guilty even under the stress of otherwise facing the death penalty did not render a plea involuntary). Kyler was shackled so that he could not escape, but, given the level of restraint necessary to prevent Kyler from escaping, his treatment appears not to have been much more extraordinary than the confinement of other prisoners who

-16-

are detained against their will pending trial. *See Kyler*, 991 P.2d at 818-19. Kyler's additional allegations of "torture" and deprivation have already been investigated by the state courts and found not to have been credible. *Id.* at 814.

3. *Review of the Colorado Supreme Court's Decision under AEDPA's "Contrary to" Or "Unreasonable Application of" Federal Law Standard*

Third, and most importantly, the Colorado Supreme Court's decision in Kyler's case was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In reaching its conclusion, the Colorado Supreme Court held that the inquiry whether Kyler's plea had been voluntary was separate from any inquiry regarding the constitutionality of his restraints. *Id.* at 818. According to that court, the "crucial issue to determine voluntariness is the degree to which the restraints affected the defendant's state of mind at the time he pleaded guilty," not additional considerations regarding process. *Id.* at 817. The Colorado Supreme Court, nonetheless, acknowledged that courts should consider "the impact of physical restraints on the voluntariness of a defendant's guilty plea as part of the totality of the circumstances existing at the time the plea was entered." *Id.* It also noted that "[a] defendant's confinement and physical condition at the time the plea is entered may affect his state of mind." *Id.*

Kyler fails to cite a U.S. Supreme Court decision articulating a standard to the contrary, and he does not argue that the Colorado Supreme Court has decided

-17-

his case "differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. Kyler instead alleges that there is no support for the Colorado Supreme Court's interpretation, but this is not the appropriate question to be debating. Although the Tenth Circuit has not read U.S. Supreme Court cases to find the constitutionality of a prisoner's restraints before his plea irrelevant to the inquiry regarding voluntariness, we conclude that the Colorado Supreme Court's interpretation did not "arrive[] at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law." *Id*. We therefore AFFIRM the district court's denial of a writ of habeas corpus.

Entered for the Court

Stephen H. Anderson
Circuit Judge