**Nicanor SANCHEZ–MARTINEZ, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 10SC83.**

Supreme Court of Colorado, En Banc.

May 9, 2011.

tain prior adjudications by the District 7 Water Court, the facts of those adjudications are not

before this Court.

The Law Office of Mark Burton, P.C., K. Mark Burton, Denver, Colorado, Attorneys for Petitioner.

Don Quick, District Attorney, Seventeenth Judicial District, Russell Wentworth, Deputy District Attorney, Brighton, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

In *Sanchez–Martinez v. People,* No. 09CV578, the Adams County District Court reversed the county court's order vacating petitioner Nicanor Sanchez–Martinez's guilty plea to third degree assault as unknowing, involuntary, and unintelligent. We granted certiorari, and reverse.[1]

In January 2008, the Northglenn Police Department ("NPD") responded to complaints of a fight occurring in the apartment of petitioner Nicanor Sanchez–Martinez. Based on allegations made by his wife, Sanchez–Martinez was charged with third degree assault and misdemeanor menacing, both of which were charged as acts of domestic violence.

Appearing pro se before Magistrate Bowen of the Adams County Court, Sanchez–Martinez pleaded guilty to third degree assault

---

1. We granted certiorari on the following issues:

(1) Whether the district court erroneously reversed the county court's order vacating the defendant's conviction because his guilty plea was unconstitutional.

(2) Whether the district court erroneously held that the county court could not address the constitutionality of the defendant's guilty plea because the issue was not raised by either party.

(3) Whether the prosecution waived its right to claim lack of notice by not raising the issue in the county court.

as an act of domestic violence and was sentenced to one year of probation, payment of a $500 fine, a sixty-day suspended jail sentence, and was ordered to complete thirty-six sessions of domestic violence counseling. Sanchez–Martinez successfully complied with the terms of his probationary sentence, and Magistrate Mole of the Adams County Court terminated his probation in January 2009.

Subsequently, in February 2009, Sanchez–Martinez brought a Crim. P. 35(c) motion requesting that his guilty plea be set aside, in light of new evidence that allegedly negated his guilt. At the hearing on the Rule 35(c) motion, the prosecution elicited testimony from the defendant establishing that he cannot read or write in Spanish or English, was never informed of the constitutional rights he waived by pleading guilty, and pleaded guilty because he believed that he would be incarcerated otherwise.

As a result, during the hearing Adams County Court Magistrate Mole expressed his concern that Sanchez–Martinez did not knowingly and voluntarily plead guilty. At the conclusion of the hearing, Magistrate Mole also informed both parties that, taking the matter under advisement, he would likely set aside the guilty plea as unconstitutional. In a subsequent written order, he did so, and the prosecution appealed to the Adams County District Court.

The district court reversed the county court, concluding that the County Court improperly addressed the constitutionality of Sanchez–Martinez's guilty plea. It concluded that the court addressed the issue of an involuntary, unknowing, unintelligent guilty plea without providing notice, in violation of the prosecution's "right to due process."

Because we determine that the county court provided the prosecution with adequate notice of its concerns about the constitutionality of the guilty plea, we do not reach the issue of whether the prosecution waived its right to claim lack of notice or whether the prosecution has such a right. We hold that the county court acted within its discretion when it addressed the constitutionality of Sanchez–Martinez's guilty plea based on evidence at the hearing. Finally, we also hold that the record supports the county court's

findings and conclusion that Sanchez–Martinez's guilty plea was unconstitutional.

## I.

On January 12, 2008, NPD officers responded to a report of an argument in Sanchez–Martinez's apartment in Northglenn, Colorado. Sanchez–Martinez and his wife, Adriana Munoz lived in the apartment with their two young children. Munoz claimed she confronted Sanchez–Martinez after he struck one of their children several times. Munoz alleged that he then grabbed her neck, pushed her against the wall, punched her several times in the head, and threatened to kill her.

Sanchez–Martinez was arrested and charged with third degree assault, section 18–3–204, C.R.S. (2010), and misdemeanor menacing, section 18–3–206, C.R.S. (2010). The prosecution charged both counts as acts of domestic violence pursuant to section 18–6–801, C.R.S. (2010).

Four days later, on January 16, 2008, Sanchez–Martinez appeared pro se with the aid of an interpreter before the Adams County Court, Magistrate Brian N. Bowen, to enter a guilty plea pursuant to Crim. P. 11. After Magistrate Bowen listed the crimes with which Sanchez–Martinez was charged, he asked whether Sanchez–Martinez read, or had read to him, and signed, an advisal of rights form. When Sanchez–Martinez indicated that he had not, Magistrate Bowen stopped the proceedings to give Sanchez–Martinez the opportunity to review and sign an advisal of rights form.

After the break, Magistrate Bowen conducted the Rule 11 colloquy. The transcript quoted below shows the Rule 11 colloquy in its entirety:

> Magistrate Bowen: Okay. We're back on the record, ah, 08–M–213. Sir, have you now had an opportunity to read or have read to you and signed this advisal of rights form? Oops. One more time. Okay, sir, have you now had the opportunity to either read or have read to you and signed this advisal of rights form.
>
> Sanchez–Martinez: Yes.

Magistrate Bowen: Do you have any questions regarding your rights?

Sanchez–Martinez: I'm wondering if I can get the PR bond and then go to alcohol classes.

Magistrate Bowen: Okay. Well, let me talk to you about what this paper says and we'll go, then I'll try to answer your question. The district attorney says that upon a plea of guilty to assault in the third degree and domestic violence, that they would dismiss the other charges on your case.

Sanchez–Martinez: Okay.

Magistrate Bowen: If they do that, the maximum possible penalty here is five thousand dollars and/or two years in the county jail, with thirty-six weeks of domestic violence classes. They have no objection to your getting probation and credit for time served in this case. Is that your understanding?

Sanchez–Martinez: You mean that I have been incarcerated?

Magistrate Bowen: Yes, you have been incarcerated, but the People would have no objection to your being placed on probation.

Sanchez–Martinez: Okay.

Magistrate Bowen: So if you're on probation, then there's no PR bond. Do you understand that, sir?

Sanchez–Martinez: What do you mean probation?

Magistrate Bowen: Probation which, would mean that you would be able to return to the community under the supervision of the court, through the probation department. Sir, are you in agreement with that?

Sanchez–Martinez: Yes.

Magistrate Bowen: Okay, Then, as to assault in the third degree, if you were to enter a plea of guilty to that charge, you would be acknowledging that you did, within the State of Colorado, on or about the twelfth day of January 2001—excuse me—2008, knowingly or recklessly cause bodily injury to another person without affirmative defense or legal justification. Sir, is that your understanding?

Sanchez–Martinez: Yes.

Magistrate Bowen: So, as to 18–3–204, assault, and 18–6–801, domestic violence, sir, how do you plead, guilty or not guilty?

Sanchez–Martinez: Guilty.

Magistrate Bowen: Do you understand that guilty means you did this; not guilty would mean you did not?

Sanchez–Martinez: Guilty means I did it?

Magistrate Bowen: Yes.

Sanchez–Martinez: Yes.

Magistrate Bowen: Did you do this?

Sanchez–Martinez: Yes.

Magistrate Bowen: Okay. Ah, has anyone promised you anything in order to have you enter this plea today?

Sanchez–Martinez: No.

Magistrate Bowen: Okay. Then, as to sentencing—counsel? (Question addressed to prosecuting counsel)

The court then sentenced him to a one-year term of probation and a sixty-day suspended jail sentence, and ordered him to pay a $500 fine and attend thirty-six sessions of domestic violence counseling.

On January 16, 2009, the Adams County Probation Department filed a petition with the Adams County Court to terminate Sanchez–Martinez's probation as successfully completed. On January 20, 2009, Magistrate Simon Mole granted the motion and terminated Sanchez–Martinez's term of probation.

On February 9, 2009, Sanchez–Martinez filed a motion for post-conviction relief pursuant to Crim. P. 35(c)(2)(V). The motion claimed that a mutual friend of both Sanchez–Martinez and Munoz, Julia Diaz–Rojas, would testify that Munoz told her she fabricated her account of the events leading up to Sanchez–Martinez's arrest. Diaz–Rojas would testify that Munoz lied to the police because she was concerned that her children would be taken away. It also alleged that Sanchez–Martinez is inexperienced with the justice system and erroneously believed that failing to plead guilty would automatically result in a sentence of two years in county jail. It claimed that this new evidence required the court to vacate Sanchez–Martinez's conviction.

On March 4, 2009 Magistrate Mole held a hearing on Sanchez–Martinez's Rule 35(c) motion. In the hearing, Diaz–Rojas testified that Munoz told her Sanchez–Martinez did not initiate the physical altercation that led to his arrest. She testified that Munoz told her she was angry because one of their children was throwing food at dinner. According to Diaz–Rojas, Munoz said she exploded after Sanchez–Martinez told her to calm down, and she hit him first as they both struggled. Diaz–Rojas testified that Munoz said she was worried her children would be taken away, so she lied to the police to place the blame on Sanchez–Martinez.

At the hearing, upon questioning by the prosecution, Sanchez–Martinez testified regarding the circumstances surrounding his guilty plea:

> District Attorney: But you pled guilty to this charge in January of 2008?
>
> Sanchez–Martinez: Yes, because what I wanted to do is I wanted to get out, I wanted to go with my family, I didn't want to lose my job. Before we went into the court they sat me down with the interpreter and the DA or somebody, I think, and they say you're gonna plead guilty, ah huh, yes. That's when I told the judge that I was pleading guilty so he would let me out, and to pay and comply with everything else.

During the postconviction relief hearing, Sanchez–Martinez repeatedly testified that it was difficult to understand the Rule 11 proceedings because the interpreter was speaking too softly and too fast. He also testified that he pleaded guilty for fear of losing his job and because the district attorney told him he would be released if he did so. He stated that he faces deportation proceedings as a result of his conviction.

In response to questions asked by the prosecution and one question posed by the court, Sanchez–Martinez revealed that he cannot read or write in Spanish or English. He stated, "The only thing that I know to do is to draw my name."

When asked by the prosecution about the advisal of rights form he initialed and signed at the Rule 11 hearing, Sanchez–Martinez testified that he signed the form without being informed of its contents:

> District Attorney: And the interpreter went through this document with you?
>
> Sanchez–Martinez: No. No, I—they only asked me to sign it.
>
> District Attorney: You did sign it?
>
> Sanchez–Martinez: Yeah, they told me to sign it. They didn't read it to me.
>
> District Attorney: Did you tell anybody that you needed help reading it?
>
> Sanchez–Martinez: No, I did not. No, they did not they just gave me the document, interpreter gave me and he said sign here, here and that's—that was it.

Following closing statements by both parties, Magistrate Mole informed the parties that he was inclined to find Sanchez—Martinez's guilty plea unconstitutional:

> I've been told this gentleman doesn't read Spanish or English, and I do find that believable and credible. I don't think this was a knowing, voluntary plea by any stretch of the—of the imagination, and frankly, I'd set aside on those grounds. And I think there's ample record here for any review[ing] [sic] court to believe that there are other grounds for setting this aside. This was somebody who was solely focused on getting out, didn't have a clue what he was doing, couldn't hear the interpreter, couldn't read the Spanish disposition form that was offered him. So I'm frankly considering reviewing my notes to see whether I should set aside on those grounds.

In a subsequent written order, Magistrate Mole found Sanchez–Martinez's testimony credible. He concluded that Sanchez–Martinez could not have read and understood the written advisal of basic constitutional rights contained in the advisal of rights form, that the record did not show that he was advised of the elements of the offense he pleaded guilty to, and that he may have received ineffective interpreter services during the Rule 11 hearing. Ultimately, he concluded that the plea was not constitutionally sound and set aside Sanchez–Martinez's judgment of conviction pursuant to Crim. P. 35(c)(2)(I).

Despite Magistrate Mole's clear indication in the Rule 35 hearing that he might find Sanchez–Martinez's guilty plea unconstitutional, the prosecution raised no objection, failed to request the opportunity to brief the issue, failed to supplement the record with a transcript from the Rule 11 hearing, and failed to file a motion for reconsideration after the court released its written ruling. Instead, the prosecution filed an appeal with the Adams County District Court, claiming lack of notice that the constitutionality of Sanchez–Martinez's plea would be at issue, and arguing that the record did not support the county court's conclusion that the plea was unconstitutional. The prosecution included the Rule 11 hearing transcript in the record on appeal to the district court.

The district court concluded that the county court improperly considered the constitutionality of Sanchez–Martinez's plea because the issue had not been raised properly in the proceedings before Magistrate Mole. We granted certiorari, and reverse the district court.

## II.

Because we determine that the county court provided the prosecution with adequate notice of its concerns about the constitutionality of the guilty plea, we do not reach the issue of whether the prosecution waived its right to claim lack of notice or whether the prosecution has such a right. We hold that the county court acted within its discretion when it addressed the constitutionality of Sanchez–Martinez's guilty plea based on evidence at the hearing. Finally, we also hold that the record supports the county court's findings and conclusion that Sanchez–Martinez's guilty plea was unconstitutional.

### A.

### Standard of Review and Applicable Law

Whether a guilty plea is knowing, voluntary, and intelligent is a mixed question of law and fact. *See People v. Kyler,* 991 P.2d 810, 818 (Colo.1999). We defer to the trial court's findings of fact unless they are so clearly erroneous as to find no support in the record. *People ex rel. A.J.L.,* 243 P.3d 244,

250 (Colo.2010). Likewise, assessing the credibility of witnesses is a trial court function. *Id.* at 249–50. We review questions of law de novo. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sherriff's Dept.,* 196 P.3d 892, 897 (Colo.2008).

### 1. Guilty Pleas

■ "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). When a defendant pleads guilty, he waives several important constitutional rights, including his privilege against self-incrimination, right to a jury trial, right to confrontation, right to a speedy and public trial, right to insist the prosecution establish guilt beyond a reasonable doubt, and right to present witnesses on his behalf. *Kyler,* 991 P.2d at 816.

To ensure the constitutionality of guilty pleas, Crim. P. 11(b) outlines various determinations the court must make before accepting a guilty plea. Among other things, Rule 11 requires the trial court to ensure that (1) the defendant understands the nature of the charges against him, the elements of the offense, and the effect of his plea; (2) the plea is voluntary and not the result of undue influence or coercion; (3) the defendant understands the right to a jury trial and waives that right on all issues; (4) the defendant understands the possible penalty for the crime; and (5) there is a factual basis for the plea.

■ Rule 11 also requires the court to ensure that the defendant is advised of "all the rights set forth in [Crim. P.] 5(a)(2)." Crim. P. 11(b); *see People v. Leonard,* 673 P.2d 37, 40 (Colo.1983). Rule 5(a)(2) requires the court to ensure the defendant's understanding of the following: the right against self-incrimination, the right to counsel, the right of indigent defendants to court-appointed counsel, that his plea must be voluntary, the right to bail, the nature of the charges, the right to a jury trial, and the right to demand and receive a preliminary

hearing within a reasonable time. Crim. P. 5(a)(2). A Rule 11 court must comply with the mandatory provisions of Rule 11, or we will conclude the guilty plea is void. *People v. Drake,* 785 P.2d 1257, 1268 (Colo.1990). In Colorado, a person accused of a misdemeanor has a right to be tried by a jury of six. § 18–1–406(1), C.R.S. (2010); Crim. P. 23(2); *see People v. Rodriguez,* 112 P.3d 693, 709 (Colo. 2005). He also has a right to be represented by counsel, and if he is indigent and faces incarceration, he has a right to court-appointed counsel. § 18–1–403, C.R.S. (2010); *see* U.S. Const. amends. VI, XIV, Colo. Const. art. II, § 16; *People v. Bergerud,* 223 P.3d 686, 693 (Colo.2010); *People v. Arguello,* 772 P.2d 87, 92 (Colo.1989). Although the right to counsel does not always extend to defendants charged with misdemeanor crimes, it does extend to a defendant where a suspended jail sentence could be revoked, resulting in incarceration. *See Alabama v. Shelton,* 535 U.S. 654, 658, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002).

■ Given the important rights at stake, to be constitutionally valid, a defendant must enter his guilty plea knowingly, voluntarily, and intelligently. *See Kyler,* 991 P.2d at 816. A Rule 11 court accepting a defendant's guilty plea must consider the totality of the circumstances to determine whether he entered his guilty plea knowingly, voluntarily, and intelligently. *Id.* at 817. A court may consider several factors bearing on the defendant's understanding of the proceedings when deciding whether a defendant's waiver of important constitutional rights was valid, including the defendant's education, familiarity with English, and experience with the legal system. *See U.S. v. Fuller,* 941 F.2d 993, 996 (9th Cir.1991).

■ "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)) (quotation marks omitted). Because a guilty plea is an extensive waiver of the defendant's constitutional rights, a challenge to a conviction based on a guilty plea is usually limited to whether the plea was knowing, voluntary, and intelligent. *Patton v. People,* 35 P.3d 124, 128 (Colo. 2001). A presumption of regularity and validity attaches to a judgment of conviction based on a guilty plea. *Id.* at 131. Accordingly, a defendant who seeks to set aside a conviction based on a guilty plea must make a prima facie showing that the plea was unconstitutional. *Id.* at 132.

■ A defendant's false statements concerning his guilty plea made during a Rule 11 hearing do not automatically bar post-conviction relief on the grounds that his plea was unconstitutional. *See Tovar Mendoza v. Hatch,* 620 F.3d 1261, 1271 (10th Cir.2010) ("But nothing in Supreme Court precedent suggests that a due process violation resulting from the entry of an unknowing plea can be overlooked due solely to the defendant having made false in-court statements during the plea hearing."). Instead, courts should consider whether the guilty plea was "so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Blackledge v. Allison,* 431 U.S. 63, 75, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

In the case of a non-English speaking defendant, providing an interpreter at the Rule 11 hearing can be important to ensuring that a guilty plea is knowing, voluntary, and intelligent. *See People v. Ochoa–Magana,* 36 P.3d 141, 143 (Colo.App.2001). When a defendant claims that his lack of proficiency in English renders his guilty plea unconstitutional, courts engage in a fact-intensive inquiry to determine the effect of the language barrier on his ability to enter a knowing, voluntary, intelligent plea. *See, e.g., United States v. Martinez–Cruz,* 186 F.3d 1102, 1104–05 (8th Cir.1999). A court may consider many factors, such as the presence of an interpreter, whether the defendant indicated that he understood the constitutional rights he waived by pleading guilty, whether the plea agreement was explained to him, and whether he was represented by bilingual counsel. *Id.* Ultimately, the particular facts

of the case will shape the court's inquiry into whether the guilty plea was entered knowingly, voluntarily, and intelligently.

### 2. Post–Conviction Proceedings

Crim. P. 35(c)(2) allows a person convicted of a crime to petition the court for post-conviction relief on certain grounds. At issue in this case are the grounds for post-conviction relief found in Rule 35(c)(2)(I) and (V):

> (I) that the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state;
>
> . . . .
>
> (V) that there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court or jury, and which requires vacation of the conviction or sentence in the interest of justice.

Section 16–5–402, C.R.S. (2010), places a statute of limitations on the filing of Rule 35(c) motions for post-conviction relief. As relevant to the instant case, the statute requires defendants convicted of misdemeanor offenses to file for post-conviction relief within eighteen months of the date of conviction. § 16–5–402(1). Sanchez–Martinez timely filed his motion for post-conviction relief.

### 3. Crim. P. 52(b)

Crim. P. 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The concept of plain error is predicated on the idea that the trial court "should have intervened sua sponte because the error was so obvious and prejudicial." *People v. Mosley*, 167 P.3d 157, 159 (Colo.App.2007) (citations omitted). A plain error so undermines the fundamental fairness of a proceeding that it casts serious doubt on the reliability of the judgment of conviction. *People v. Miller*, 113 P.3d 743, 750 (Colo.2005).

Crim. P. 52(b) is virtually identical to Fed.R.Crim.P. 52(b), which provides that "a plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Under Fed.R.Crim.P. 52(b), appellate courts may raise sua sponte a critical issue affecting substantial rights. *E.g., King v. United States*, 595 F.3d 844, 854 (8th Cir.2010). Although Fed.R.Crim.P. 52(b) is commonly understood to provide for sua sponte notice of critical issues by appellate courts, a trial court may also take notice of plain error on its own motion. *E.g., United States v. Lawhorne*, 29 F.Supp.2d 292, 313, 318 n. 42 (E.D.Va.1998)("Numerous decisions recognize that district courts are permitted to engage in plain error review and to determine whether a flaw in criminal proceedings was so patent as to warrant a new trial despite the absence of a timely objection by defense counsel."); *see also Moland v. People*, 757 P.2d 137, 141 (Colo.1988)(noting that issue was properly argued because trial court introduced issue at its own instance).

### B.

### The Prosecution was on Notice that the Constitutionality of Sanchez–Martinez's Guilty Plea was at Issue.

We do not address whether the prosecution waived its lack of notice argument by failing to raise it before the county court, or whether the prosecution has a due process right to notice, because we conclude the prosecution was on notice that the constitutionality of Sanchez–Martinez's plea would be at issue.

The prosecution incorrectly asserts that the county court spontaneously held a hearing on the constitutionality of the defendant's plea. Contrary to this assertion, the record shows that, of its own volition, the prosecution elicited the testimony from Sanchez–Martinez that initially raised the trial court's concern regarding the constitutionality of his plea. The prosecution asked questions regarding the Rule 11 hearing interpreter and Sanchez–Martinez's ability to understand him, his understanding of the advisal of rights form, and his ability to

write or read. The prosecution may not have been able to anticipate Sanchez–Martinez's responses to those questions—that he could not read or write either in Spanish or English, and he had not understood or been informed pursuant to the applicable law. Nonetheless, that it asked a series of questions addressed to buttressing the constitutionality of Sanchez–Martinez's guilty plea negates any argument that the prosecution was not on notice of this issue.

 During the Rule 35(c) hearing in the instant case, the prosecution and the defense agreed that *People v. Schneider,* 25 P.3d 755 (Colo.2001), sets forth the test for whether a conviction predicated on a guilty plea should be set aside in light of newly discovered evidence. In *Schneider,* we articulated a stringent three-part test to be applied in such situations. 25 P.3d at 762. Explaining our rationale for the test, we stated that "a defendant who voluntarily and knowingly enters a plea accepting responsibility for the charges is properly held to a higher burden in demonstrating to the court that newly discovered evidence should allow him to withdraw that plea." *Id.* at 761.

Here, the prosecution instituted questioning in which it sought to establish that Sanchez–Martinez had entered a knowing, voluntary, intelligent plea.[2] During the hearing, based on Sanchez–Martinez's answers, Magistrate Mole explicitly stated that he was considering setting aside the guilty plea as unconstitutional. We conclude that the prosecution was on notice of this issue, in addition to the issue of newly discovered evidence.

### C.

### The Trial Court Properly Addressed the Constitutionality of Sanchez– Martinez's Guilty Plea.

 Sanchez–Martinez is illiterate in both Spanish and English. His misunderstanding of the nature of the Rule 11 hearing indicates that he did not understand the most basic aspects of the United States' criminal justice system. Appearing pro se, he had no legal counsel to assist him in making the determination of whether to plead guilty or proceed to trial. The prosecution elicited testimony from Sanchez–Martinez that indicated: he was not advised of the constitutional rights he would waive by pleading guilty; he pleaded guilty because he mistakenly believed that failure to do so would automatically lead to his incarceration; and he could not understand the interpreter during the Rule 11 hearing.

Sanchez–Martinez filed his Rule 35(c) motion within eighteen months of the date of conviction, as required by section 16–5–402(1). In light of the evidence, Magistrate Mole correctly undertook to examine whether Sanchez–Martinez's guilty plea was knowing, voluntary, and intelligent. Because a guilty plea affects many of a defendant's substantial rights, the trial court was permitted to address the issue. Crim. P. 52(b); *see Boykin,* 395 U.S. at 242, 89 S.Ct. 1709 (discussing the implications of a guilty plea); *Mosley,* 167 P.3d at 159; *Kyler,* 991 P.2d at 816 (listing important constitutional rights waived by defendant who pleads guilty); *cf. Roberts,* 144 P.3d at 550. Accordingly, we reverse the district court's holding to the contrary.

### D.

### The Record Supports Magistrate Mole's Conclusion that Sanchez–Martinez's Guilty Plea was Unconstitutional.

In assessing Magistrate Mole's order vacating Sanchez–Martinez's conviction, we defer to his findings of fact and review de novo his conclusion of law that the guilty plea was unconstitutional. *See A.J.L.,* 243 P.3d at 249–50; *Kyler,* 991 P.2d at 818. We consider the totality of the circumstances to determine whether the guilty plea was entered knowingly, voluntarily, and intelligently. *See Kyl-*

---

**2.** In *Farrar v. People,* we stated that claims of newly discovered evidence do not implicate the constitutionality of a criminal conviction. 208 P.3d 702, 706 (Colo.2009). That case concerned whether a defendant convicted at trial was entitled to a new trial on the basis of the alleged victim's recantation of her accusations. *Id.* at 704–05. Thus, *Farrar* is inapplicable to this case where facts came to the trial court's attention in the Rule 35(c) proceeding demonstrating that the guilty plea was not knowing, voluntary, and intelligent.

*er*, 991 P.2d at 817. While a presumption of regularity and validity attaches to a judgment of conviction based on a guilty plea, we determine the record adequately supports Magistrate Mole's findings of fact and conclusion of law that Sanchez–Martinez's guilty plea was unconstitutional.[3] *See Patton*, 35 P.3d at 131.

Magistrate Mole found Sanchez–Martinez credible, and the record supports that finding. *See A.J.L.*, 243 P.3d at 249–50. He also found that (1) Sanchez–Martinez cannot read or write in Spanish or English, (2) he was told to sign his advisal of rights form without having it read to him, and (3) he had difficulty hearing the interpreter during the Rule 11 hearing. Based on these facts, Magistrate Mole found that "at the time he entered his plea, [Sanchez–Martinez] had very little if any conception of what was happening, other than that he would be allowed to go home if he said guilty." We conclude that the record adequately supports these findings of fact. *See A.J.L.*, 243 P.3d at 250.

Based on the record before us, we conclude Sanchez–Martinez did not understand the effect of pleading guilty, and his plea did not represent a "voluntary and intelligent choice among alternative courses of action." *See Hill*, 474 U.S. at 56, 106 S.Ct. 366. Sanchez–Martinez is a non-English speaking, illiterate, non-citizen defendant appearing pro se, with an apparently limited understanding of the United States criminal justice system. *See Fuller*, 941 F.2d at 996. The Rule 11 court fell short of its duty to ensure his understanding of the important constitutional rights he possessed, and that were waived by pleading guilty.[4] The unique facts of this case lead us to the determination that Sanchez–Martinez's guilty plea was unconstitutional. *See Martinez–Cruz*, 186 F.3d at 1104–05; *Fuller*, 941 F.2d at 996.

The record shows that Sanchez–Martinez was not informed of and did not understand the alternative courses of action available to him. *See Hill*, 474 U.S. at 56, 106 S.Ct. 366. The court found that he had "little, if any conception of what was happening," and concluded that he did not understand the panoply of important constitutional rights waived by pleading guilty, including the right to a jury trial and the right to be represented by counsel. Because he was accused of committing two misdemeanor offenses, Sanchez–Martinez had the right to be tried by a jury of six. *See* § 18–1–406(1); Crim. P. 23(2); *Rodriguez*, 112 P.3d at 709. Because the sentence imposed included a sixty-day suspended jail sentence that could result in actual incarceration, Sanchez–Martinez had the right to be represented by counsel. *See Shelton*, 535 U.S. at 658, 122 S.Ct. 1764. Sanchez–Martinez claims that he believed that failing to plead guilty would automatically lead to his incarceration.

His misapprehension of the consequences of pleading not guilty underscores the unknowing, involuntary, unintelligent nature of his guilty plea. It also highlights the ways in which procedural safeguards put in place by the constitutions, laws, and rules to protect the rights of criminal defendants failed in this instance.

The record shows that Sanchez–Martinez had difficulty understanding the court interpreter provided during the Rule 11 hearing. *Cf. Martinez–Cruz*, 186 F.3d at 1104–05 (guilty plea constitutional where record did not show ineffective interpreter services). Even if the court-provided interpreter service had been effective, the record shows that the Rule 11 colloquy was materially inadequate.

Magistrate Bowen recited the elements of third degree assault, but made no inquiry into whether Sanchez–Martinez actually understood the nature of the constitutional rights waived by pleading guilty, including the right to a jury trial and the right to

---

3. Although we may accept as true in-court statements made by a defendant during a Rule 11 colloquy, *e.g.*, *People v. Rockwell*, 125 P.3d 410, 418 (Colo.2005), we are not compelled to do so when the record supports the conclusion that the defendant did not understand the proceedings, his alternative courses of action, or the important constitutional rights at stake. *Cf. Hill*, 474 U.S. at 56, 106 S.Ct. 366.

4. The prosecution included the Rule 11 hearing transcript in the record on appeal to the district court. As such, it is properly before us as part of the appellate record.

counsel. The record shows that Sanchez–Martinez was aware of the right to plead not guilty, but the record does not indicate that he was advised of any of the other rights waived by a guilty plea. Merely inquiring into whether defendant had the opportunity to "read or ha[ve] read to him" the advisal of rights form listing those rights does not, by itself, ensure that the defendant understands the nature of those rights, as required by Rule 11. Magistrate Bowen impermissibly relied on the interpreter to ensure Sanchez–Martinez's understanding of these important rights. This inappropriate reliance was aggravated by the fact that Sanchez–Martinez appeared pro se and had no advice of counsel to offset the prosecution's inducements to a guilty plea.

The record also indicates that the interpreter told Sanchez–Martinez to sign and initial the advisal of rights form describing the consequences of his guilty plea without reading the form to him. *Cf. id.* (guilty plea constitutional where bilingual defense attorney explained guilty plea petition to defendant). Because Sanchez–Martinez cannot write or read in English or Spanish, he could not have understood the important constitutional rights waived by pleading guilty. *See Kyler,* 991 P.2d at 816. The trial court did not discharge its duty properly during the Rule 11 hearing.

The prosecution argues that Magistrate Mole's findings and conclusions regarding the constitutionality of Sanchez–Martinez's guilty plea should be disregarded because he did not have before him the Rule 11 hearing transcripts. We disagree because Sanchez–Martinez's testimony during the Rule 35 hearing explained, rather than refuted, his testimony during the Rule 11 hearing. In response to the district attorney's questions, he gave further, detailed testimony establishing his lack of understanding of the proceedings and the failure of the Rule 11 court to ensure that he was aware of the important constitutional rights he waived by pleading guilty. Had Magistrate Mole been presented with the Rule 11 colloquy transcript, it would have only buttressed his judgment to vacate the guilty plea.

The prosecution had the opportunity to provide the Rule 11 colloquy transcript to the county court and to ask the court to review it. The prosecution did not do so. While this transcript was before the district court on appeal, it summarily dismissed the issue when it erroneously concluded that the prosecution was not on notice of the issue in the proceeding before Magistrate Mole.

Although Sanchez–Martinez stated during the Rule 11 hearing that he understood the rights he waived by pleading guilty, the record supports Magistrate Mole's findings of fact and conclusion that Sanchez–Martinez's guilty plea was unconstitutional. Considering the totality of the circumstances, the combined effect of the several errors at issue in this case—Sanchez-Martinez's lack of understanding of the Rule 11 hearing due to the language barrier and ineffective translation, the defective Rule 11 advisement by the court before entry of the guilty plea, and his lack of knowledge of a criminal defendant's numerous constitutional rights, including the right to a jury trial, the right to an attorney, the right to confrontation, and the right to present witnesses on his behalf—support this conclusion. *See Kyler,* 991 P.2d at 817; *cf. Fuller,* 941 F.2d at 996 (defendant's limited education, lack of experience with the legal system, and limited proficiency with English language indicate unknowing waiver). Therefore, we hold that the district court improperly reversed Magistrate Mole's order vacating Sanchez–Martinez's guilty plea.

### III.

Accordingly, we reverse the district court and reinstate the county court's judgment vacating Sanchez–Martinez's guilty plea.

Justice COATS dissents, and Justice RICE and Justice EID join in the dissent.

Justice COATS, dissenting.

I consider the majority's resolution of this case to be not only misguided but particularly unfortunate as well. Whether the defendant was read and understood the written Spanish advisement and waiver of rights he signed before entering his guilty plea largely involves a determination of fact, which could

have been easily, and fairly, resolved by simply affording the People a reasonable opportunity to produce the record of the providency hearing, the interpreter assigned by the court to assist the defendant, and anyone else who might be knowledgeable concerning the defendant's ability to either understand English or read Spanish. Instead, the majority ties itself in knots, compromising both the post-conviction and guilty plea law of the jurisdiction, to defend factual findings supported by nothing more than the defendant's own last-minute, untested, self-serving testimony and a grant of relief never requested by the defendant. Because I believe a criminal defendant is entitled to post-conviction relief only upon actually moving for it and thereby subjecting his assignments of error to proper investigation and challenge, I respectfully dissent.

Criminal defendants are liberally entitled to post-conviction relief in this jurisdiction for violations of the Constitution or laws of either the United States or this state. Their applications for post-conviction review, however, must substantially comply with a specific format and contain specifically designated information, including every ground upon which a claim of unlawful confinement is made. See Crim. P. 35(c)(3)(II); Crim. P. Form 4. For hopefully obvious reasons, the relief requested by a defendant may not be granted without first causing "a complete copy of said motion to be served on the prosecuting attorney," permitting the prosecution thirty days to respond, and if factual determinations are required, conducting a hearing and taking "whatever evidence is necessary for the disposition of the motion." Crim. P. 35(c)(3)(V).

The defendant in this case applied for post-conviction review of his conviction as required by the rule, but did so without the slightest insinuation that he was not advised of or did not understand the rights he was waiving and the plea he was entering. He did not suggest in any way that he was asserting a defect in his plea amounting to a violation of the federal and state laws or constitutions. See Crim. P. 35(c)(2)(I). Rather he asserted, in elaborate detail, that he was entitled to a new trial on the basis of newly discovered evidence undermining his wife's credibility. See Crim. P. 35(c)(2)(V). He relied exclusively on our holding in *People v. Schneider,* 25 P.3d 755, 762 (Colo.2001), which entitles even defendants entering guilty pleas to a new trial based on newly discovered evidence in the limited circumstance in which the charges against them are demonstrably false or unfounded. Rather than asserting that his plea was involuntary or unintelligent, or was in any other way unlawful or defective, the defendant instead expressly alleged that the charges to which he pled were false or unfounded.

After hearing the matter, the magistrate completely rejected as unfounded the defendant's claim of entitlement to a new trial based on newly discovered evidence. Nevertheless, the magistrate vacated the defendant's guilty plea as involuntary and unintelligent, reasoning that *Schneider* impliedly found a motion for post-conviction relief based on newly discovered evidence to simultaneously put at issue the validity of the underlying guilty plea. To the contrary, in *Schneider* we narrowly circumscribed the relief available for newly discovered evidence following guilty pleas precisely because such claims necessarily *accept, rather than contest,* the validity of the underlying plea and instead seek new trials entirely on equitable grounds. See *id.* at 761; see also *Farrar v. People,* 208 P.3d 702, 706 (Colo.2009) (motion for new trial based on newly discovered evidence does *not* challenge the lawfulness of the underlying conviction). Perhaps in tacit recognition of the post-conviction magistrate's confusion, the majority does not rely on, or even mention, this rationale for notice to the prosecution.[1]

Instead the majority advances other (but equally unconvincing) justifications for the defendant's failure to assert, in his motion for post-conviction relief, the ineffectiveness of his plea. The majority suggests both that the prosecutor was given adequate notice by

---

**1.** By footnote the majority attempts to distinguish *Farrar* but not on the grounds that the defendant's claim of newly discovered evidence put the prosecutor on notice of a challenge to the validity of his guilty plea as well. See maj. op. at 1257 n.2.

the magistrate's hints about his concerns just prior to taking the matter under advisement and that any entitlement to notice the prosecution might have had was somehow diminished or eliminated by the fact that the prosecutor was cross-examining the defendant when he first made his surprise revelation of ignorance. With regard to the former, although the majority nowhere identifies a procedural default by the prosecution, it apparently intends that the prosecutor abandoned any objection by failing to anticipate and preemptively challenge as improper the basis of the court's subsequent written ruling. With regard to the latter, the majority would apparently penalize the prosecution for attempting to cross-examine the defendant after he unresponsively and without prior warning injected his claim of illiteracy into the hearing. To most readers it might seem obvious from the timing of these two events alone that by the time they happened the prosecutor lacked any meaningful opportunity to rebut the defendant's testimony.

In any event, the majority proceeds to suggest, in reliance on the plain error doctrine of Crim. P. 52, that it was within the discretion of the Crim. P. 35(c) magistrate to address the lawfulness of the defendant's guilty plea, despite its never having been raised in a motion for post-conviction relief, because a guilty plea includes the waiver of substantial rights. The plain error doctrine permits limited review of obvious trial error based on its seriousness, despite the absence of contemporaneous objection. It in no way implies that errors (whether objected to or not) may be reviewed without being raised in the reviewing court, and the authorities relied on by the majority suggest nothing of the sort. We have previously identified situations in which an appellate court may be justified in exercising its discretion to review important issues not expressly raised by a party, *see Roberts v. Am. Family Mut. Ins. Co.,* 144 P.3d 546, 549–51 (Colo.2006), but even on appellate review, which is based entirely on an existing record, we have been cognizant of the importance of providing an opportunity for an adversely affected party to respond. Unlike appellate review, a motion for post-conviction relief is provided for the express purpose of taking evidence and

developing an additional record, making notice in time for meaningful rebuttal all the more essential.

Finally the majority finds that the defendant's advisement was inadequate and that he failed to understand even the rights of which he was advised. The boilerplate selected by the majority notwithstanding, we have long held that although a providency hearing is designed to evidence the constitutional validity of guilty pleas, *see People v. Leonard,* 673 P.2d 37, 39–40 (Colo.1983), and therefore compliance with Crim. P. 11 will normally satisfy constitutional due process concerns, *see People v. District Court,* 868 P.2d 400, 404 (Colo.1994), violations of the rule do not necessarily amount to a constitutional violation. In particular, we have expressly held that a defendant's in-court affirmation that he understood the matters described in a written and signed advisement of his rights provides sufficient compliance with the rule. *People v. Rockwell,* 125 P.3d 410, 418 (Colo.2005). As the record on appeal makes perfectly clear, the providency hearing was delayed to permit the defendant an additional opportunity to have read to him and sign a written advisement of his rights, after which he affirmed, on the record, that he read or had read to him his rights and had questions only about his personal recognizance bond. Because the defendant's Motion for Post–Conviction Relief merely alleged newly discovered evidence, however, neither the transcript of the trial court's advisement nor the complete written Spanish advisement and waiver of rights, including the handwritten specifics of the plea agreement itself, which was signed by both the defendant and the court, was ever considered by the post-conviction court.

The question whether the defendant perjured himself in claiming at his providency hearing to have read, or had read to him, and understood this written Advisal of Rights, or whether he perjured himself in later claiming at his post-conviction hearing not to understand English, read Spanish, or have had his Spanish Advisal of Rights read to him by his interpreter, is clearly a matter of fact, or credibility. And while many judicial officers might have found a defendant's subsequent self-serving recantation less credible than did

the magistrate in this case, it was clearly for the magistrate, as the trier of fact, whether to believe the defendant was being truthful at the post-conviction rather than the providency hearing. The point is, however, that the defendant's failure to plead the inadequacy of his advisement or his lack of understanding effectively precluded consideration of any evidence contradicting his post-conviction testimony.

If, as appears to be the case, the defendant is facing deportation consequences of which he was unaware at the time of the providency hearing, he may have alternate grounds for vacating his plea. *Cf. Padilla v. Kentucky,* — U.S. —, — – —, 130 S.Ct. 1473, 1482–83, 176 L.Ed.2d 284 (2010); *People v. Pozo,* 746 P.2d 523, 528–29 (Colo.1987). If his post-conviction testimony was indeed truthful, he would at least appear to have a legitimate claim that his post-conviction counsel was ineffective for not asserting the ineffectiveness and invalidity of his plea in the first place. *See Silva v. People,* 156 P.3d 1164, 1168–69 (Colo.2007). In my view, however, the defendant's entitlement to relief on these grounds must be established as an evidentiary matter, after proper pleading in a proper forum.

Because I am disinclined to compromise sound principles of law, no matter how sympathetic a particular defendant may be, I respectfully dissent.

I am authorized to state that Justice RICE and Justice EID join in this dissent.