22CA2110 Peo v Woodford 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA2110 El Paso County District Court No. 21CR5711 Honorable Eric Bentley, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Tyler Madison Woodford, Defendant-Appellant. JUDGMENT AFFIRMED Division III Opinion by JUDGE MOULTRIE Dunn and Yun, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2024 Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Ainsley Bochniak, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant 
 1 ¶ 1 Defendant, Tyler Madison Woodford, appeals the trial court’s denial of his motion to withdraw his guilty plea. We affirm. I. Background and Procedural History ¶ 2 An August 2021 altercation between Woodford and the victim led to Woodford being charged with second degree assault, second degree kidnapping, menacing, third degree assault, and harassment. ¶ 3 In November 2021, the court appointed the public defender’s office to represent Woodford (plea counsel). In May 2022, Woodford appeared with his plea counsel for an arraignment hearing where he submitted a plea agreement that included a stipulated twenty-four-month probation sentence. ¶ 4 Before Woodford’s case was called on the record, a defendant in an unrelated case intended to enter a guilty plea. And before the court advised the defendant in the unrelated case of their rights related to the plea, it inquired of all counsel in the courtroom whether any other defendants anticipated entering pleas. Woodford’s plea counsel indicated that Woodford would be entering a plea. The court asked Woodford to listen to the advisement of rights being given to the other defendant. 
 2 ¶ 5 The court told Woodford to “please listen carefully” and that “these are the rights that you . . . give up by pleading guilty” before it proceeded to provide a Crim. P. 11 advisement on the record to the defendant in the unrelated case. ¶ 6 Approximately fifty minutes after providing the advisement in the unrelated case, the court called Woodford’s case on the record and began reviewing the terms of the fifteen-page written plea agreement with him, his plea counsel, and the prosecutor. The plea agreement was signed by Woodford, his plea counsel, and the prosecutor, and as relevant here, it stated that • Woodford “wish[ed] to plead guilty to” menacing, a class 5 felony; • he understood the nature of the charge, the elements of the offense to which he was pleading guilty, and the effect of the plea; • he unlawfully, feloniously, and knowingly placed or attempted to place the victim in fear of imminent serious bodily injury by use of a deadly weapon — namely, a handgun — in violation of section 18-3-206, C.R.S. 2023; 
 3 • he would be sentenced to twenty-four months of supervised probation, be required to complete an anger management course and forty-eight hours of community service, and be required to pay court costs, restitution, and any applicable surcharges; • if he was granted probation, a possible penalty and condition of probation could be a sentence of up to ninety days in the county jail; • he was waiving certain rights, which included his right to a trial by jury on all issues; • he had been advised, and he understood, that he didn’t need to make any statement and that any statement he made may be used against him; that his plea agreement “must be voluntary and must not be the result of any undue influence, coercion, or force by anyone”; and that he had the right to enter a “not guilty” plea to any offense charged against him; • he “under[stood] that the Court [would] not be bound by any representations or promises made to [him] 
 4 concerning penalties to be imposed or the granting or denial of probation”; • he “agree[d] that [his] plea [was] final,” that “[o]nly the judge [had] the power to reject [the plea] agreement later,” and that “[o]nce [he] [pleaded] guilty in court, [he] [would] not be allowed to change [his] mind”; and • he “read and under[stood] [the] entire document” and “discussed the document and [his] plea fully with [his] lawyer.” ¶ 7 In addition to the written plea agreement, there was a colloquy between the court, Woodford, and his plea counsel regarding the terms of the plea and the rights Woodford was waiving by pleading guilty. ¶ 8 Before the court accepted the plea agreement, the prosecutor noted that the court had discretion to impose a ninety-day jail sentence if it granted Woodford probation, despite the parties’ stipulated sentence. The prosecution raised this issue after the victim, who had previously been unreachable, appeared at the hearing and gave a statement to the court opposing the terms of the plea agreement. When the court asked Woodford’s plea counsel for 
 5 his position on the discretionary imposition of a ninety-day jail sentence, he responded, “Judge, I’m going to need a moment with Mr. Woodford.” ¶ 9 Plea counsel stepped into the hallway to discuss the potential penalty with Woodford. When Woodford’s case was recalled on the record, his plea counsel agreed that the plea agreement gave the court discretion to impose a ninety-day jail sentence as a condition of probation and indicated that he had reviewed that possibility with Woodford, albeit not carefully, because the issue didn’t usually arise with stipulated probation sentences. ¶ 10 The court then turned to Woodford and asked, “Mr. Woodford, after hearing all of this, is that your understanding of your plea agreement?” Woodford responded affirmatively and the court proceeded with its colloquy, which included the following: THE COURT: All right[,] . . . Mr. Woodford, did you sign the plea agreement? Is that your signature on the signature line at the back? MR. WOODFORD: It is. THE COURT: By signing the plea agreement, are you representing to the Court that you’ve gone through it line by line with your lawyer, that you understand everything in the plea 
 6 agreement, and that you agree to everything in the plea agreement? MR. WOODFORD: Yes. THE COURT: [H]as anybody promised you anything to get you to plead guilty, other than what is set out in writing in this plea agreement? MR. WOODFORD: No. THE COURT: Has anybody forced you or threatened you in any way to get you to plead guilty? MR. WOODFORD: No. THE COURT: Is this plea agreement what you want to do? MR. WOODFORD: I suppose so, yes. THE COURT: Whenever someone answers something that’s a little bit along the lines of “I suppose so[”] or “I think so,” I usually pause because . . . I have to [go] through [a] couple more details, but in the end I’ll be asking you whether you plead guilty to [menacing], and I want to make sure that you have all the time that you need to make sure that this is what you want to do because once you enter your plea of guilty you can’t take it back. So, if you need any more time, I’m very happy to give it to you. I’m happy to pause the proceeding now and give you a few minutes, or even have you come back in the afternoon if you prefer, [be]cause the most important thing to me in every plea agreement is that the person who [is] entering a plea — that has such a big 
 7 impact on their life — . . . has taken all the time that they need to think it through. MR. WOODFORD: I suppose this is the best outcome I could really hope for, so we’ll proceed. THE COURT: Okay. All right. When you plead guilty[,] you give up certain rights[.] [W]ere you listening carefully when I went through those with another defendant? MR. WOODFORD: Yes, I was. THE COURT: Okay. Are you confident that you understand all the rights that you’re giving up by pleading guilty? MR. WOODFORD: I am. THE COURT: And with that understanding do you want to proceed with this plea? MR. WOODFORD: Yes, sir. ¶ 11 The court accepted the plea agreement and set Woodford’s sentencing hearing in July 2022. At the sentencing hearing, a different public defender appeared on Woodford’s behalf. The new public defender informed the court that Woodford wanted to withdraw his guilty plea because of his concerns with plea counsel’s advice. Due to the potential conflict created by Woodford’s claims about plea counsel’s advice, the court appointed alternate defense counsel (ADC). 
 8 ¶ 12 ADC timely filed a motion under Crim. P. 32(d) (the motion) requesting the withdrawal of Woodford’s guilty plea and asserting that (1) it was unclear from the arraignment hearing record whether the court’s advisements to Woodford under Crim. P. 5 and 11 were sufficient; (2) “[a]ssuming, without conceding, the advisement was correct, and that Mr. Woodford was present for the advisement, Mr. Woodford . . . did not understand the advisement at the time he was entering a plea”; and (3) Woodford had “fair and just” reason to withdraw his plea because he detrimentally relied on the incorrect legal advice of his plea counsel. ¶ 13 After holding an evidentiary hearing on the motion, the court found Woodford’s assertions were “insufficient to constitute a fair and just reason to withdraw the plea” and denied the motion. The court later sentenced Woodford to twenty-four months of probation and ninety days in jail but suspended the jail sentence. This appeal followed. II. Standard of Review ¶ 14 We review de novo a defendant’s challenge to the constitutional validity of their guilty plea. See Brooks v. People, 2019 CO 75M, ¶ 6. But we give deference to the trial court’s 
 9 findings of fact unless they are unsupported in the record. Sanchez-Martinez v. People, 250 P.3d 1248, 1254 (Colo. 2011). And when a trial court denies a defendant’s motion to withdraw a guilty plea under Crim. P. 32, we review such denial for abuse of discretion. Crumb v. People, 230 P.3d 726, 730 n.3 (Colo. 2010). III. Applicable Legal Principles ¶ 15 A guilty plea is constitutionally valid only if done “voluntarily, knowingly, and intelligently,” with the defendant having sufficient awareness of the relevant circumstances and likely consequences of the plea. Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005). And to “facilitate a more accurate determination of the constitutional validity of guilty pleas,” Crim. P. 11 outlines various determinations a trial court must make before accepting a guilty plea. People v. Leonard, 673 P.2d 37, 39-40 (Colo. 1983). One such required determination is that a defendant has been advised of the possible penalties associated with the entry of their guilty plea. Craig v. People, 986 P.2d 951, 963 (Colo. 1999); see Crim. P. 11(b)(4). ¶ 16 Rule 11 also requires the trial court to ensure that the defendant is advised of “all the rights set forth in [Crim. P.] 5(a)(2).” Crim. P. 11(b); see Leonard, 673 P.2d at 40. And, as relevant here, 
 10 under Crim. P. 5(a)(2), the trial court is required to ensure the defendant’s understanding of the following: the right against self-incrimination, that their plea must be voluntary, the nature of the charges, and the right to a jury trial. See Sanchez-Martinez, 250 P.3d at 1254-55. ¶ 17 While “[a] presumption of regularity and validity attaches to a judgment of conviction resulting from a guilty plea,” Patton v. People, 35 P.3d 124, 131-32 (Colo. 2001), a trial court “must comply with the mandatory provisions of Rule 11, or we will conclude the guilty plea is void,” Sanchez-Martinez, 250 P.3d at 1255. ¶ 18 If, after the trial court accepts a defendant’s guilty plea but before the sentence is imposed, a defendant demonstrates a “fair and just reason” for withdrawing their guilty plea, then the trial may permit such withdrawal under Crim. P. 32(d). People v. Chippewa, 751 P.2d 607, 609 (Colo. 1988) (quoting People v. Gutierrez, 622 P.2d 547, 559 (Colo. 1981)). 
 11 IV. Discussion A. The Trial Court’s Crim. P. 5 and Crim. P. 11 Advisements were Adequate ¶ 19 Woodford asserts his plea cannot stand because the record is insufficient to show that the court’s advisement was appropriate since there is no written advisement in the court file and the court’s verbal advisement only exists in the record of the unrelated case. The People contend that we must “presume that the trial judge did not commit error absent affirmative evidence otherwise.” LePage v. People, 2014 CO 13, ¶ 15. We agree with the People. ¶ 20 At the hearing on the motion, the trial court “supplemented” the record by informing the parties that it had reviewed in its entirety the plea colloquy that occurred on the record of the unrelated case and determined that the colloquy “covered all the bases for an appropriate advisement of rights.” The court also noted that ADC could further supplement the record by obtaining the transcript from the unrelated case. ¶ 21 Woodford contends here, as he did before the trial court, that the record is insufficient to show that he was adequately advised under Rules 5 and 11. But it was his burden to settle and 
 12 supplement the record. See C.A.R. 10(f), (g); People v. Ray, 2012 COA 32, ¶ 6 (“If a party believes that the appellate record is incomplete or inaccurate, it must correct the deficiency under C.A.R. 10.”). He did neither. ¶ 22 Despite the trial court informing ADC that they could request the transcript from the unrelated case to supplement the record in Woodford’s case, the record doesn’t reflect that a transcript was ever requested or provided to the trial court. See § 24-72-304(1), C.R.S. 2023 (regarding public access to criminal justice records); Chief Justice Directive 05-01, Access to Court Records (amended Feb. 2024) (regarding public access to court records). And the record in the trial court needed to be settled before the record here could be supplemented. See C.A.R. 10(f), (g). Thus, we presume the regularity of the trial court’s advisement. See LePage, ¶ 15; see also United States v. Aguilar-Vera, 698 F.3d 1196, 1200 (9th Cir. 2012) (noting that, while Fed. R. Crim. P. 11 doesn’t strictly prohibit collective advisements, a trial court’s advisement procedure must be sufficient to show that each defendant pleaded voluntarily and understood the consequences of such plea). This is especially so because the trial court made an additional record about the 
 13 advisement colloquy and because the written plea agreement — which Woodford signed — included the substance of the advisements required under Rules 5 and 11. B. The Trial Court Did Not Abuse Its Discretion by Denying the Motion ¶ 23 Next, Woodford contends that, because plea counsel was ineffective, he established a “fair and just” reason for withdrawing his guilty plea and the trial court abused its discretion and subverted justice by not allowing him to do so. We aren’t persuaded. ¶ 24 In his motion and during the evidentiary hearing on the motion, Woodford argued that his plea counsel lacked knowledge of the contents of the plea, demonstrated ignorance of criminal sentencing procedures, failed to advise him before the arraignment hearing that his county court cases weren’t a part of the plea agreement, and advised him that if the court sentenced him to probation with a jail sentence, he could withdraw his plea agreement. ¶ 25 “Ineffective assistance of counsel at the time a guilty plea is entered may constitute a fair and just reason to withdraw the plea 
 14 prior to sentencing.” Kazadi v. People, 2012 CO 73, ¶ 21. Woodford asserted that he “detrimentally relied on the incorrect legal counsel of his attorney,” who he alleged “demonstrated both a lack of knowledge of the contents of the plea and ignorance of criminal sentencing procedure in general.” But Woodford has failed to satisfy the two-prong test for ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984): to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) legal counsel’s performance was deficient and (2) said deficient performance prejudiced the defendant. When a defendant asserts ineffective assistance of counsel related to a plea agreement, he must demonstrate that “but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” People v. Corson, 2016 CO 33, ¶ 35 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)); People v. Gresl, 89 P.3d 499, 503 (Colo. App. 2003). ¶ 26 The court did not find credible Woodford’s testimony that he didn’t understand the terms of the plea agreement and that his plea counsel incorrectly advised him that he could withdraw his plea after sentencing. The court found that Woodford’s plea counsel was 
 15 “generally competent,” that he had several years of experience, and that counsel had “handled hundreds and hundreds of cases . . . and dozens and dozens of plea colloquies.” Furthermore, the court found with record support that even if it had found credible Woodford’s testimony that his plea counsel gave him incorrect advice, that wouldn’t be a fair and just reason to allow Woodford to withdraw his plea because Woodford’s assertion that he didn’t understand the terms of the plea agreement “is rebutted so thoroughly by the proceedings on the record at the plea colloquy.” ¶ 27 And even assuming that plea counsel’s performance was deficient, Woodford hasn’t proved the second Strickland prong — that he was prejudiced by plea counsel’s deficient performance — because there was no evidence presented that he would have rejected his plea counsel’s purportedly incorrect advice and gone to trial. People v. Sifuentes, 2017 COA 48M, ¶ 20 (defendant must demonstrate through objective evidence that they would have insisted on going to trial if they had been properly advised). To the contrary, Woodford stated at the time of his plea that the plea was the “best outcome [he] could really hope for.” 
 16 ¶ 28 Thus, the trial court didn’t abuse its discretion by denying the motion due to plea counsel’s alleged ineffective assistance. V. Disposition ¶ 29 We affirm the judgment of conviction. JUDGE DUNN and JUDGE YUN concur.